## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

—————————————————— )
LUV 'N CARE, LTD. and ADMAR ) Civil Action No.
  INTERNATIONAL, INC. )
 )
                    Plaintiffs, )
 )
             v. )
 )
JACKEL INTERNATIONAL LIMITED )
  and MAYBORN USA, INC., )
 )
                    Defendants. )
—————————————————— )

## COMPLAINT

Plaintiffs Luv 'n care, Ltd. ("LNC") and Admar International, Inc. ("Admar") (collectively "Plaintiffs"), for their Complaint against Defendants Jackel International Limited ("Jackel") and Mayborn USA, Inc. ("Mayborn")(collectively "Defendants") allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

### NATURE OF THE ACTION

1.      This is an action for breach of contract involving certain agreements between LNC and Jackel which are governed by the laws of the State of Louisiana and for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401 *et seq.*  This is also an action for infringement of U.S. Patent No. 8,695,841 (the "'841 patent"), entitled "No-Spill Drinking Cup Apparatus," arising under the Patent Laws of the United States, 35 U.S.C. §101 *et seq.*

### THE PARTIES

2.      Plaintiff Luv 'n care, Ltd. is a corporation organized and existing under the laws of the State of Louisiana having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.

3.      Plaintiff Admar is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.  Plaintiff Admar International, Inc. is an affiliate of Plaintiff Luv 'n care, Ltd.

4.      Plaintiff Admar is the owner by assignment of the '841 patent.

5.      Upon information and belief, Defendant Jackel International Limited is a corporation organized and existing under the laws of England and Wales having a principal place of business at Dudley Lane, Cramlington, Northumberland, NE 23 7RH, England.

6.      Upon information and belief, Defendant Mayborn USA, Inc. is a corporation organized and existing under the laws of the State of New York, having a principal place of business at One Edgewater Drive, Brookside Park, Norwood, Massachusetts 02062.

7.      Following a February 7, 2013 jury verdict, the State of Louisiana, Parish of Ouachita, Fourth District Court, entered a Judgment dated May 21, 2013 in an action styled *Luv n' care, Ltd. v. Jackel International Limited*, No. 10-1891 ("*Jackel I*").  A true and correct copy of the May 21, 2013 Judgment is attached as Exhibit A.

8.      In relevant part, the May 21, 2013 Judgment held that Defendant Jackel International Ltd. and Defendant Mayborn USA, Inc. constitute a single business enterprise.  See Exhibit A, Judgment, p. 1.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States,

35 U.S.C. §§ 271, *et seq.*  This Court also has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1332 because this action involves citizens of different States, on the one

hand, and citizens of a different State and of a foreign state, on the other hand.

10.      This Court has personal jurisdiction over the Defendants.  Pursuant to the terms of

a 2008 Agreement between Plaintiff LNC and Defendant Jackel, any patent disputes arising out

of or relating to the 2008 Agreement shall be brought before and heard by this Court.

11.      This Court also has personal jurisdiction over Defendants and venue is proper in

this District pursuant to 28 U.S.C. § 1391(c) and/or § 1400.  The Court also has personal

jurisdiction over Defendants consistent with the principles underlying the U.S. Constitution.

Upon information and belief, Defendants have established minimum contacts with this District

such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair

play and substantial justice.  Upon further information and belief, Defendant Mayborn, operating

together with Defendant Jackel as a single business enterprise, regularly transacts and does

business in the District, including selling and promoting products that infringe the '841 patent in

retail establishments located within the State of Texas and within this District.

12.      The Court has supplemental jurisdiction over the parties in this action relating to

the breach of contract and LUTPA claims.

## STATEMENT OF FACTS

13.      Plaintiff LNC is one of the leading baby product companies in the world today.

Plaintiff LNC together with its brand, Nûby™, are well known throughout the United States and

foreign countries as a result of the popular products that it has designed, introduced, and commercialized in interstate and international commerce for use by babies, young children and mothers.

14.     Plaintiff LNC and Defendant Mayborn are direct competitors in the United States in the field of baby and child products.

15.     Plaintiff LNC entered into an Agreement with Defendant Jackel with an effective date of April 17, 2003 (the "2003 Agreement") which established a contractual relationship between the parties through April 16, 2008.  A true and correct copy of the 2003 Agreement is attached as Exhibit B.

16.     Plaintiff LNC entered into another Agreement with Defendant Jackel with an effective date of April 17, 2008 (the "2008 Agreement") which renewed the 2003 Agreement.  A true and correct copy of the 2008 Agreement is attached as Exhibit C.

17.     Pursuant to both the 2003 Agreement and the 2008 Agreement (collectively "the Agreements"), Defendant Jackel was to serve as the exclusive distributor of the following LNC products bearing the trademark(s) "Luv n' Care," "LNC," "Nuby" and/or "Natural Touch" in the United Kingdom, Ireland and Gibraltar:   bottles (including silicone, polypropylene and polycarbonate bottles); teats and nipples; soothers and pacifiers; cups and tableware, including spill proof weaning cups (including straws); teethers; bibs; breast pumps and sterilizers; bottle warmers; and infant care baby accessories, namely, nipple/teat brushes, bottle brushes, pacifier/soother holders and cases, bottle bags, milk powder dispensers, and storage cases and containers.

18.     As part of the Agreements, Defendant Jackel expressly acknowledged and agreed not to copy, imitate or utilize any of LNC's products, product designs, drawings, prototypes,

packaging, procedures and methods, any other proprietary designs or information without Plaintiff LNC's written permission.  In the event that Defendant Jackel was found to have copied, imitated or utilized any of Plaintiff LNC's product designs and/or packaging, it would be liable to Plaintiff LNC for breach of contract.

19.     During the terms of the Agreements, Defendant Jackel further provided that it would not disclose or make accessible to anyone, or make use of, the knowledge or information which it had obtained during the term of the Agreements with respect to product design, drawings, prototypes, procedures and methods, any other proprietary designs or information of LNC without the written consent of Plaintiff LNC.

20.     Defendant Jackel further agreed not to use in any fashion Plaintiff LNC's products, product designs, drawings, prototypes, procedures and methods, any other proprietary designs or information of Plaintiff LNC, or any colorable imitation thereof.  Any use of the above-described information and property without Plaintiff LNC's written consent would be a violation of the Agreements.

21.     Under the terms of the 2008 Agreement, Defendant Jackal agreed that "the validity and interpretation of this Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana" and further agreed "that any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be adjudicated and settled in the State of Louisiana, before the 4th Judicial District Court for the Parish of Ouachita."  Exhibit C, 2008 Agreement, ¶14, p. 7.

22.     Under the terms of the 2008 Agreement, Defendant Jackal further agreed that any claims involving patent and other intellectual property disputes "shall be heard before the United

States District Court, Eastern District of Texas, Marshall Division."  Exhibit C, 2008 Agreement, ¶14, p. 7.

23.    In the *Jackel I* action for breach of the Agreements, a Jury found that Defendants Jackel and Mayborn constitute a single business enterprise, that the Agreements were valid and enforceable, and that Defendants Jackel and Mayborn are bound by the terms and provisions of the Agreements.  Exhibit A, Judgment, p. 1.

24.    In *Jackel I*, the Jury also found that Defendants Jackel and Mayborn breached the Agreements by selling certain soft spout cups, flip-top cups, and straw cups in violation of Defendants' obligations under the Agreements.

25.    In *Jackel I*, the Jury further found that Defendants Jackel and Mayborn violated LUTPA and competed unfairly with Plaintiff LNC by selling the products at issue in that litigation.

26.    Since the filing of the *Jackel I* action, Plaintiffs have became aware that Defendants are advertising, promoting, commercializing, and selling additional products (the "Accused Products") that were not at issue in *Jackel I*.  These additional products constitute a further breach of Defendants obligations under the Agreements.   Generally, the Accused Products consist of Defendants' "Explora" line of products including the "Explora" cups with removable valves.  Upon information and belief, Defendants' "Explora" line of products is also known as the Penguin line of products.

27.    Defendants "Explora" line of products are the result of the wrongful misappropriation and use of Plaintiff's proprietary designs to which Defendants were provided access under the terms of the Agreements.

28.     Defendants' commercialization, promotion, advertising and sales of the Accused Products violate the terms of the Agreements and are used without LNC's permission.

29.     Plaintiff LNC's Chief Executive Officer, Nouri Edward Hakim, conferred with Defendants' CEO, Steve Parkin, regarding the Accused Products in an effort to resolve the dispute without Court intervention and in fulfillment of the dispute resolution provisions of the Agreements.  The effort to resolve the dispute proved unsuccessful.

30.     On April 15, 2014, the United States Patent and Trademark Office ("PTO") duly and legally issued the '841 patent.  Plaintiff Admar is the owner by assignment of the entire right, title and interest in and to the '841 patent.  A true and correct copy of the '841 patent is attached as Exhibit D.

31.     The Accused Products infringe at least one claim of the '841 patent.

32.     On April 15, 2014, Mayborn USA, Inc. (as the Plaintiff) filed a Complaint for Declaratory Relief against LNC and Mr. Nouri E. Hakim (as the Defendants), the named inventor of the '841 patent, in an action styled *Mayborn USA, Inc. v. Luv n' care, Ltd. and Nouri Edward Hakim*, United States District Court for the District of Massachusetts, Civil Action No. 14-11846 (the "Mayborn Boston Action").  A true and correct copy of the Complaint for Declaratory Judgment (without exhibits) as filed in the Mayborn Boston Action is attached hereto as Exhibit E.

33.     In the Mayborn Boston Action, Mayborn seeks a declaratory judgment that the Accused Products do not infringe any claim of the '841 patent.

34.     In the Mayborn Boston Action, Mayborn confirms that a meeting took place between LNC's CEO and Mayborn's CEO on Saturday, February 2, 2013, the subject matter of which included the Accused Products – the Penguin/Explora line of products.  Specifically,

Mayborn alleges that "on or about Saturday, February 2, 2013, the Chief Executive Officer of Mayborn Group Limited (Plaintiff Mayborn USA, Inc. is a wholly owned subsidiary of Mayborn Group Limited), Steve Parkin, and Defendant Hakim, met to discuss the potential settlement of three ongoing litigations involving Mayborn (or companies affiliated with Mayborn) and LNC." Exhibit E, Complaint for Declaratory Judgment, ¶ 9, p. 3.

35.     Mayborn also alleges that during the course of the February 2, 2013 meeting, "Mr. Hakim told Mr. Parkin that LNC recently received a Notice of Allowance for claims in a pending patent application, and Mr. Hakim asserted that Mayborn's Penguin line of products…infringes the allowed claims." Id.

36.     In the Mayborn Boston Action, Mayborn further alleges that, on February 4, 2013, communications ensued between LNC's counsel and Mayborn's counsel identifying the specific patent application for which LNC had received a Notice of Allowance and providing a copy of the current file history for the '841 patent to Mayborn's counsel.  Exhibit E, Complaint for Declaratory Judgment, ¶¶ 10-11, p. 4.

37.     On this same day of February 4, 2013, Mayborn alleges that a meeting took place between LNC's counsel (Morris E. Cohen and Lee Goldberg) and Mayborn's counsel (James Grant) the subject matter of which was the allowed claims of the soon-to-be-issued '841 patent and infringement by the Penguin/Explora line of products.  Exhibit E, Complaint for Declaratory Judgment, ¶ 12, p. 4.

38.     As result of the communications and meeting between LNC's counsel and Mayborn's counsel, Defendants had actual notice of the allowed claims of the soon-to-be-issued '841 patent and Plaintiffs' infringement contentions regarding Defendants' Penguin/Explora line of products.

39.     On April 15, 2014, on the same date that the '841 patent issued, Mayborn filed the Mayborn Boston Action.

40.     On August 13, 2014, Mayborn voluntarily dismissed the Mayborn Boston Action without having served either of the named defendants.

41.     Mayborn's filing of the Mayborn Boston Action in the United States District Court for the District of Massachusetts is, itself, a breach of the terms of the 2008 Agreement with respect to the proper forum for adjudicating disputes between the parties involving patents and other intellectual property.

## COUNT I

## BREACH OF CONTRACT

42.     Plaintiffs incorporate by reference, as if fully rewritten herein, the facts and allegations set forth in paragraphs 1 through 41, above.

43.     Defendants' commercialization, promotion, advertising and sale of the Accused Products constitute a deliberate and willful violation of the terms of the Agreements.

44.     As a direct and proximate result of Defendants deliberate and willful breach of the Agreements by the sale of the Accused Products in the United States, Plaintiffs have been and will continue to be damaged in an amount that cannot be presently ascertained and that cannot be compensated adequately by monetary relief alone.

## COUNT II

## VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

45.     Plaintiffs incorporate by reference, as if fully rewritten herein, the facts and allegations set forth in paragraphs 1 through 44, above.

46.     The Jury in *Jackel I* has previously found that Defendants violated the Louisiana Unfair Trade Practices and Consumer Protection Law by competing unfairly with LNC in selling the products at issue in that litigation.  See Exhibit A, p. 1.

47.     Defendants' activities in the commercialization, promotion, advertising and sale of the Accused Products are willful and designed to take unfair advantage of Defendants' prior business relationship with Plaintiff LNC under the terms of the Agreements.

48.     Defendants' activities constitute unfair methods of competition and unfair and/or deceptive acts of practice in the conduct of any trade or commerce.

49.     Defendants' acts of unfair competition are willful and Defendants have profited from these acts of unfair competition and/or deceptive trade practices.

50.     Defendants have acted as a single business enterprise to willfully commit unfair and/or deceptive trade practices from which they have illegally profited at the expense of Plaintiff LNC.

51.     Plaintiff has and will continue to suffer substantial damages as a result of Defendants' acts of unfair competition and/or deceptive trade practices in an amount that cannot be presently ascertained.

## COUNT III

### INFRINGEMENT OF U.S. PATENT NO. 8,695,841

52.     Plaintiffs incorporate by reference, as if fully rewritten herein, the facts and allegations set forth in paragraphs 1 through 51, above.

53.     In violation of 35 U.S.C. § 271, Defendants have directly infringed and continue to directly infringe one or more claims of the '841 patent by making, using, offering for sale, and/or selling the Accused Products in the United States.

54.     As evidenced by the filing of the Mayborn Boston Action, Defendants had actual notice of the '841 patent as of the day of its issuance on April 15, 2014.

55.     As further evidenced by the filing of the Mayborn Boston Action, Defendants had actual notice of Plaintiffs' infringement allegations with respect to the allowed claims of the soon-to-be-issue '841 patent by the Accused Products no later than February 4, 2013.

56.     Upon information and belief, Defendants will continue to infringe the '841 patent unless enjoined by this Court.

57.     Defendants do not have a license or permission to use the '841 patented inventions.

58.     As a result of Defendants' infringement of the '841 patent, Plaintiffs are being irreparably injured, and will suffer additional irreparable injury unless and until Defendants are enjoined by this Court.

59.     As a further result of Defendants' infringement of the '841 patent, Plaintiffs have suffered and will continue to suffer damages, in an amount yet to be determined, including damages due to loss of sales, profits, and potential sales that Plaintiffs would have made but for Defendants' infringing acts.

60.     Upon information and belief, Defendants' infringement of the '841 patent is and has been willful.

61.     Upon further information and belief, despite meeting with Plaintiffs' counsel to discuss the allowed claims of the soon-to-be-issue '841 patent and Plaintiffs' infringement contentions involving the Accused Products, Defendants have continued to manufacture, use, offer for sale, and/or sell the Accused Products in the United States in reckless disregard of Plaintiffs' patent rights.

62.     Upon further information and belief, despite knowledge of the '841 patent and knowledge of its own infringing acts, Defendants have taken no steps to discontinue sales or importation of the Accused Products or remove the Accused Products from the United States market.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor against Defendants and grant the following relief:

A.      For judgment that Defendants have breached the Agreements;

B.      For judgment that Defendants have engaged in acts of unfair competition and/or engaged in unfair and/or deceptive acts of practice in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 *et seq*;

C.      For judgment that Defendants have infringed one or more claims of the '841 patent in the manufacture, use, offer for sale and/or sale of one or more of the Accused Products within the United States;

D.      For an award of equitable relief under 35 U.S.C. § 283, including but not limited to an injunction that enjoins Defendants and Defendants' officers, agents, servants, employees, representatives, successors, and assigns, and all others acting in concert or participation with them, from continued infringement of the '841 patent;

E.      For an award of damages sufficient to compensate Plaintiffs for Defendants breach of the Agreements and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law;

F.      For an accounting of all infringing sales of the Accused Products;

G.     For an award of damages sufficient to compensate Plaintiffs for Defendants' infringement of the '841 patent, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

H.     For a finding that Defendants' infringement of the '841 patent is willful and for an order trebling damages under 35 U.S.C. § 284;

I.     For an order finding that this is an exceptional case under 35 U.S.C. § 285 and awarding relief, including Plaintiffs reasonable attorneys' fees, costs, and expenses incurred in this action; and

J.     For such other relief to which Plaintiffs are entitled or the Court may deem just and proper.


Dated:  August 14, 2014                    Respectfully submitted,

Of Counsel:                                By: _/s/ Deron R. Dacus_
                                           Deron R. Dacus
Joe D. Guerriero                           State Bar No. 00790553
General Counsel                            THE DACUS FIRM, P.C.
LUV N' CARE, LTD.                          821 ESE Loop 323
3030 Aurora Avenue                         Suite 430
Monroe, LA  71201                          Tyler, TX  75701
Tel No.:  318-338-3603                     Tel. No.:  903-705-1117
Fax No.:  318-388-5892                     Fax No.:  903-705-1117 or 903-581-2543
Email:  joed@nuby.com                      Email:  ddacus@dacusfirm.com

                                           Attorneys for Plaintiffs
                                           Luv n' care, Ltd. and Admar
                                             International, Inc.