IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC. | § § § | |
| Plaintiffs, | § § | Civil Action No. 2:14-cv-00855-JRG |
| v. | § § | |
| JACKEL INTERNATIONAL LIMITED and MAYBORN USA, INC., | § § § | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Jackel International Limited and Mayborn USA, Inc.'s (collectively, "Jackel") Motion to Stay (Dkt. No. 10). The Plaintiff, Luv N' Care, Ltd. and Admar International (collectively, "LNC"), oppose the motion. After considering the parties' written submissions, the Court finds that the Motion should be and is hereby DENIED WITHOUT PREJUDICE.

**I.   Background**

At issue in this case is whether a pending Federal Circuit appeal in a separate case will have enough of an impact in the present case to justify a stay of the current proceedings. The patents at issue in both cases are related, which makes a discussion of their previous history relevant.

On December 12, 2011, LNC filed a lawsuit in the Eastern District of Texas against Koninklijk Philips NV (the "Philips Action") asserting infringement of five United States Patents that trace their roots back to LNC's U.S. Patent No. 6,321,931 (the "parent '931 patent"). The

parent '931 patent, entitled a "No-spill drinking cup apparatus," discloses "[a]n improved no-spill cup construction and valve assembly which provides an extremely secure seal against accidental liquid flow from the cup spout." U.S. Patent '931 [57].

The '931 patent has already been litigated in the Western District of Louisiana (the "Louisiana litigation").[1]  In the Louisiana litigation, the court found that the claim term "opening" from the patent was not as broad as claimed because the inventors made specific disclaimers in the prosecution history of the '931 patent (the "'931 disclaimer").  With much of the scope disclaimed, the Louisiana court found that the alleged product did not infringe the '931 patent.  The Court in the alternative went on to say that "were the court not to construe the patent in this manner, then the invalidity of the . . . patent '931 is assured." *Hakim v. Cannon Avent Grp., PLC*, No. CIV.A. 3-02-1371, 2005 WL 1793760, at *6 (W.D. La. May 4, 2005) *aff'd*, 479 F.3d 1313 (Fed. Cir. 2007).

The claim term "opening"—and the accompanying '931 disclaimer—are at the heart of the current dispute.  In the face of the adverse ruling in the Louisiana litigation, the inventors of the '931 patent applied for and were granted several child patents, five of which are at issue in the Philips Action and one of which—U.S. Patent No. 8,695,841 (the "'841 patent")—is at issue in the current action.  LNC contends that the '931 disclaimer (and claim limitation) found in the parent '931 patent was rescinded during the prosecution of the child patents, and particularly during the prosecution of the patent in issue in this case—the '841 patent.

---

[1] *Hakim v. Cannon Avent Grp., PLC*, No. CIV.A. 3-02-1371, 2005 WL 1793760 (W.D. La. May 4, 2005) *aff'd*, 479 F.3d 1313 (Fed. Cir. 2007).

### A. History of the Philips Action and the Federal Circuit Appeal

This Court issued a claim construction ruling in the Philips Action on July 9, 2013, finding among other things that the same disclaimer concerning the parent '931 patent from the Louisiana litigation applied to the five child patents in the Philips Action. This disclaimer led LNC to concede that the accused Philips product did not infringe under the Court's interpretation. The parties filed a Joint Motion for Entry of Judgment of Non-Infringement, and LNC appealed the Court's claim construction ruling to the Court of Appeals for the Federal Circuit.

At the Federal Circuit, LNC filed its opening appeal brief on May 23, 2014, arguing that this Court had erred in finding that the '931 disclaimer applied because that disclaimer had been rescinded. In doing so, LNC relied on arguments it raised with the USPTO during the prosecution of the '841 patent—being one of the patents at issue in this present case but neither at issue nor construed in the original Philips Action. LNC contends that it can use evidence of an Examiner Interview that took place during the prosecution of the '841 patent as evidence that LNC rescinded the '931 disclaimer during the prosecution of the five patents-in-suit in the Philips Action. Therefore, argues LNC, the '931 disclaimer (and claim scope limitation) does not apply to the five patents-in-suit in the Philips Action.

In Philip's responsive brief to the Federal Circuit, Philips disagrees that evidence from the Examiner Interview from the '841 patent is relevant to the Philips Action and the five patents-in-suit there. Alternatively, Philips argued that the prosecution history and Examiner Interview concerning the '841 patent that allegedly shows a rescission of the '931 disclaimer is insufficient to rescind the disclaimer for the five patents-in-suit in the Philips Action because the statements made by LNC are too vague and not specific enough to overcome the prior

3

disclaimer. Finally, Philips argues that even if LNC rescinded the '931 disclaimer, then the five patents would be invalid in light of the prior art, just as the Louisiana litigation suggested for the parent '931 patent.

### B. The Prosecution of the '841 Patent

The underlying patent application that eventually issued as the '841 patent (U.S. Patent Application Serial No. 12/797,061—the "'061 patent application") was filed on June 9, 2010. On March 9, 2012, LNC submitted a response to the first Office Action, an Action that rejected the pending patent claims in the '061 patent application. Referring to the various related patent applications which issued as the patents-in-suit in the Philip's Action, LNC stated that "no limitations or prosecution disclaimers on the language of the claims should be imported into any claim from earlier prosecution or prior versions of the claims or prior patents." Pl. Res. Ex. A at 7. LNC further stated that "[a]ny disclaimers or alleged disclaimers during prosecution [of the parent '931 patent] should be deemed rescinded herein." *Id.* The Examiners considered these statements.

In response to a Final Office Action, LNC filed a Request for Continued Examination ("RCE") on October 18, 2012. In the RCE, LNC told the USPTO of the filing of the Complaint in the Philips Action, identified the five patents-in-suit in that Action, and provided an update on the status of the litigation. On January 3, 2013, in a subsequent response to a Notice of Allowability, LNC filed a second RCE and updated the Examiner on the status of the Philips Action and submitted additional prior art identified by Philips during discovery. On October 29, 2013, in response to another Notice of Allowability, LNC filed a third RCE and an additional IDS containing all the briefing on the claim construction issues in the Philips Action, the transcript from the *Markman* hearing of the Philips Action, and a copy of the claim construction

order from the Philips Action. LNC informed the USPTO that the claim construction order addressed the issues of the '931 disclaimer and the rescission of such disclaimer in connection with earlier patents in the same family as the present '061 application. LNC also confirmed that the claim construction order construed the term "opening" that also appears in the pending claims in the related '061 application.

LNC's patent counsel then initiated and attended an in-person interview at the USPTO on November 25, 2013. According to LNC, the summary of the discussion during the interview shows that the Examiners considered the '931 prosecution disclaimer and considered it rescinded not just for the '061 patent application, but also for the five related patents involved in the Philips Action. LNC further alleges that the very prior art from the Louisiana litigation that would have invalidated the parent '931 patent in the absence of the disclaimer was considered during the prosecution of the '061 patent application. LNC contends that the USPTO therefore considered everything before it including the claim construction order in the Philips Action, the discussion of the rescission, and all prior art disclosed during the Philips Action and the Louisiana litigation. After considering all this evidence and prior art, the USPTO issued the '061 patent application as the '841 patent on April 15, 2014.

In August of 2014, LNC filed the present case against Jackel alleging patent infringement, a state-law breach of contract claim, and a claim for unfair competition.

**II.   Applicable Law**

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005) (citations omitted). Management of the court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N.*

*Am. Co.*, 299 U.S. 248, 254 (1936). In striking that balance, courts typically consider three factors: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify issues in question and trial of the case, and; (3) whether discovery is complete and whether a trial date has been set. *Soverain Software LLC*, 356 F.Supp.2d at 662. "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on those factors." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-00081, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

### III. Discussion

The first factor the Court addresses is whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party. As noted, this case has three separate but interrelated parts: (1) a patent infringement claim; (2) a state-law breach of contract claim; and (3) a state-law unfair competition claim.

Jackel argues that the breach of contract and unfair competition claims are reliant on a determination of the scope of the proprietary rights—tied to the '841 patent—alleged to have been misappropriated in violation of the relevant contracts. LNC, on the other hand, argues that the breach of contract and unfair competition claims are not tied to the '841 patent, noting that LNC's proprietary rights and patent rights are not coextensive. LNC alleges that its proprietary rights include (among other things) patents, trademarks, trade names, and copyrights. The contracts at issue also contain language that is outside the patent scope; for example, preventing Jackel from copying or utilizing any of LNC's product packaging, business plans, prototypes, etc. Regardless of the outcome of the Federal Circuit appeal concerning the five related patents, the issue of breach and unfair competition concerning these contracts will remain an issue.

This Court places emphasis on the speedy resolution of a party's rights—including patent rights, contract rights, and the right to be free from unfair competition. A stay in the proceedings at this point would hinder and delay the adjudication of those important rights. When combined with the uncertain nature of the results of the appeal, this factor does not favor a stay. *See Allergan, Inc. v. Sandoz*, No. 2:12-cv-207, 2013 WL 1222347, at *1 (E.D. Tex. March 25, 2013) (finding that the uncertain nature of a Federal Circuit appeal weighs against granting a stay under this factor).

Under the second factor, the Court assesses whether a stay will simplify issues in question and trial of the case. The parties focus much of their argument on this factor.

As an initial matter, the parties do not agree on an answer to the basic question of whether the Federal Circuit will consider the evidence of the Examiner Interview from November of 2013. That evidence was not before this Court when it issued its claim construction ruling, and Jackel argues that it is irrelevant. However, the Examiner Interview is relevant to the present case, as it took place during the prosecution of the patent that is at issue in the present case—the '841 patent. Therefore the Federal Circuit appeal may not simplify this issue.

Next, Jackel argues that LNC—by putting the Examiner Interview of November 2013 in issue in the Federal Circuit appeal—has sought a substantive ruling on the alleged disclaimer rescission. Any substantive ruling, alleges Jackel, will have a direct influence in the present case and may be case dispositive. In other words, Jackel argues that if the Federal Circuit finds that the alleged rescission of the '931 disclaimer was invalid as to the five patents-in-suit in the Philips Action, then the rescission is invalid (and may be case dispositive) in the present action.

On the other hand, LNC argues that the central issue in the Federal Circuit appeal is whether LNC properly rescinded the '931 disclaimer in the five related patents-in-suit in the Philips Action, not whether LNC rescinded the '931 disclaimer in the '841 patent. LNC argues that the Examiner Interview was not submitted to the Federal Circuit for what it said about the pending claims in the '841 patent, but instead was submitted to the Federal Circuit as evidence of how the Examiners viewed the alleged rescission vis-à-vis the patents-in-suit in the Philips Action. The Court finds this argument persuasive.[2] The '841 patent, and the prosecution history of the '841 patent, is not before the Federal Circuit; therefore any substantive ruling regarding how that Examiner Interview affects the five related patents in the Philips Action does not *de facto* affect the '841 patent. In fact, the prosecution history of the '841 patent contains explicit statements regarding the rescission that the other related patents lack. The Examiners allowed the '841 patent to issue despite these explicit statements. As a result, the Federal Circuit ruling—even if it favors Philips (and therefore Jackel)—does not automatically simplify the case because the factual situation surrounding the issuance of the '841 patent is manifestly different than the factual situation surrounding the issuance of the parent '931 patent and the five patents-in-suit in the Philips Action.

In addition, even if the Court assumes that Jackel is correct and a substantive ruling regarding the rescission would apply to the '841 patent, then the Court may have to make another logical leap to render the issues simplified. Jackel argues that even if the Federal Circuit sides with LNC and finds the rescission valid—giving rise to a broader interpretation of the

---

[2] Without deciding any factual issue, the Court notes that the Examiner summary does state that the disclaimer was rescinded for the five patents-in-suit in the Philips Action. That summary was not before the Court during the Philips Action (as the interview had not yet taken place), but the Court did consider rescission arguments during the Philips Action and nevertheless found the rescission invalid.

claims—then the Federal Circuit will follow the reasoning of the Louisiana litigation and render the five patents-in-suit invalid over the prior art. Jackel alleges that if the Federal Circuit invalidates the five patents-in-suit in that action, then the '841 patent ultimately would be invalidated as well. The Louisiana litigation suggested (but did not hold) that the parent '931 patent would be invalid over the prior art under the broader interpretation that would result if the rescission was valid. Jackel admits, however, that an invalidity finding, if any,[3] regarding the five patents-in-suit in the Philips Action at the Federal Circuit would not directly apply to the present case.

On the other hand, LNC points out that the prior art which would have invalidated the parent '931 patent in the Louisiana litigation was before the Examiner during the prosecution of the '841 patent. The Examiners allowed the patent to issue over this prior art. Therefore, Jackel requires the Court to assume that the Federal Circuit's ruling regarding five related patents, combined with a suggestion from the Louisiana litigation regarding the parent '931 patent, would render the present '841 patent invalid over prior art that the Examiners reviewed when prosecuting the '841 patent. The Court does not currently believe this assumption to be warranted.

Based on the above, the Court believes that the results of the Federal Circuit appeal could, but may not, have an effect on the simplicity of the present case. An appellate decision on different patents with different disclaimers, rescissions, prosecution history, and prior art will not necessarily impact the validity and infringement issues here. *Allergan, Inc. v. Sandoz Inc.*, No.

---

[3] As LNC correctly points out, there is no guarantee that the Federal Circuit will reach the issue of invalidity of the five patents-in-suit. The appeal was taken from a final judgment concerning non-infringement, not invalidity.

9

2:12-cv-207, 2013 WL 1222347, at *2 (E.D. Tex. March 25, 2014). This factor does not favor a stay.

The third factor is whether discovery is complete and whether a trial date is set. This case is still in its early stages. However, the Court has set a trial date and *Markman* date for this case, although the parties have yet to file the proposed Docket Control Order. As a result, this factor favors a stay to some degree.

The Court finds that two of the three factors weigh against a stay in this case. The Court places, what it believes to be, a proper emphasis on the prompt resolution of a party's rights and does not believe that the Federal Circuit ruling will necessarily (if at all) simply the issues in this case. On balance, these two factors outweigh the third factor. Therefore Jackel's Motion to Stay is DENIED WITHOUT PREJUDICE to refiling after the Federal Circuit has ruled.

**So ORDERED and SIGNED this 10th day of November, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE