**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

LUV N CARE, LTD. and ADMAR
INTERNATIONAL, INC.

          Plaintiffs,

    v.

JACKEL INTERNATIONAL LIMITED and
MAYBORN USA, INC.,

          Defendants.

Civil Action No. 2:14-cv-855-JRG

**<u>DEFENDANTS' RULE 12(c) MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND...............................................................................2

    A.      The Previous State Court Litigations...................................................2

    B.      The Complaint and Attached Contracts..............................................5

III.    LEGAL STANDARD...........................................................................................6

IV.     ARGUMENT ........................................................................................................7

    A.      It Is Appropriate, Fair, and Efficient to Dispose of LNC's Non-
        Patent Claims Now ..................................................................................7

    B.      Res Judicata ............................................................................................8

        1.      Louisiana's Res Judicata Law Applies ...................................8

        2.      Under Louisiana Law, Plaintiffs' Breach of Contract and
            LUTPA Claims Are Barred by Res Judicata ...............................8

            a.      The Previous Judgment Is both Valid and Final............................9

            b.      The Parties Are the Same............................................................9

            c.      The Claims Here Existed at the Time of Final
                Judgment..................................................................................10

            d.      The Claims Here Arose Out of the Same
                Transaction or Occurrence ........................................................11

    C.      To the Extent LNC Is Asserting that Its Recently Issued Patent
        Creates New Breach of Contract and LUTPA Claims, the
        Claims Are Wholly Implausible Under *Iqbal/Twombly* ......................13

V.      CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMEC Civil, LLC v. State, Dep't of Transp.*,
    41 So. 3d 235 (Fla. Dist. Ct. App. 2010) ...............................................................................13

*Bolanos v. Madary*,
    609 So.2d 972 (La. App. 4 Cir.1992) .....................................................................................15

*Brennan's, Inc. v. Brennan*,
    377 F. Supp. 2d 579 (E.D. La. 2005) ...............................................................................12, 13

*Buck v. Deutsche Bank Nat'l Trust Co.*,
    No. 05-2986, 2006 WL 1968863 (E.D. La. July 12, 2006) .....................................................10

*Burguieres v. Pollingue*,
    843 So. 2d 1049 (La. 2003) ......................................................................................................8

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ....................................................................................................7

*Cheramie Serv. V. Shell Deepwater Product*,
    35 So. 3d 1053 (La. 2010) ......................................................................................................15

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ....................................................................................................7

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ....................................................................................................6

*Durkin v. Quest, Inc.*
    724 So. 2d 868 (La. Ct. App. 5th Cir. 1998)...........................................................................12

*Energy Dev. Corp. v. St. Martin*,
    296 F.3d 356 (5th Cir. 2002) ....................................................................................................9

*Favrot v. Favrot*,
    68 So.3d 1099 (La. Ct.App. 4 Cir. 2011)................................................................................14

*Forum for Equality PAC v. McKeithen*,
    839 So. 2d 738 (La. 2005) ......................................................................................................10

*Gladney v. Am. Heritage Life Ins., Co.*,
    80 F. Supp. 2d 594 (W.D. La. 1999)......................................................................................11

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) ...................................................................6

*Hall v. United States*,
   No. 06-cv-528, 2008 WL 276397 (E.D. Tex. Jan. 30, 2008) ...................................7

*Hanley v. Aperitivo Rest. Corp.*,
   No. 97-cv-5768, 1998 WL 307376 (S.D.N.Y. June 11, 1998) ...............................12

*Harnett v. Billman*,
   800 F.2d 1308 (4th Cir. 1986) ................................................................11

*Hercules Machinery Corp. v. McElwee Bros., Inc.*,
   2002 WL 31015598 (E.D. La. Sep. 2, 2002) ..............................................14

*Hugel v. Se. La. Flood Prot. Auth.-E.*,
   429 F. App'x 364 (5th Cir. 2011) ..........................................................10

*Hughes v. The Tobacco Inst., Inc.*,
   278 F.3d 417 (5th Cir. 2001) ...................................................................6

*Hy-Octane Inv., Ltd v. G & B Oil Prods., Inc.*,
   702 So. 2d 1057 (La. Ct. App. 3d Cir. 1997)............................................11, 12, 13

*Jackson Joint Venture v. World Constr. Co., Inc.*,
   499 So. 2d 426 (La. App. 4th Cir. 1986) ................................................14

*James B. Day & Co. v. Reichhold Chems., Inc.*,
   60 F.R.D. 387 (N.D. Ill. 1973) ..............................................................12

*Lemonds v. St. Louis County*,
   222 F.3d 488 (8th Cir. 2000) ...................................................................7

*N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*,
   943 So. 2d 429 (La Ct. App. 1st Cir. 2006) ..............................................11

*Oreck Direct, LLC v. Dyson, Inc.*,
   544 F. Supp. 2d 502 (E.D. La. 2008) ......................................................11

*Prod. Supply Co. v. Fry Steel, Inc.*,
   74 F.3d 76 (5th Cir. 1996) ...................................................................8

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ...................................................................7

*Rhodes v. Prince*,
   360 F. App'x 555 (5th Cir. 2010) ..........................................................14

*Segal v. Smith, Jones & Fawer, L.L.P.*,
    838 So. 2d 62 (La. Ct. App. 4th Cir. 2003) ........................................................................9

*Smith v. Parish of Jefferson*,
    889 So. 2d 1284 (La. Ct. App. 5th Cir. 2004) .................................................................9

*Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co.*,
    649 So. 2d 86 (La. Ct. App. App. 4th Cir. 1994) .........................................................12

*Tolis v. Bd. of Supervisors of La. State Univ.*,
    660 So. 2d 1206 (La. 1995) ...............................................................................................9

*Travcal Props., LLC v. Logan*,
    49 So. 3d 466 (La. Ct. App. 3d Cir. 2010) ....................................................................11

*Voest-Alpine Trading USA Corp. v. Bank of China*,
    142 F.3d 887 (5th Cir. 1998) .............................................................................................6

*Weaver v. Tex. Capital Bank N.A.*,
    660 F.3d 900 (5th Cir. 2011) ...........................................................................................12

*Zatarain v. WDSU Television, Inc.*,
    No. 94-cv-1018, 1995 WL 295317 (E.D. La. May 8, 1995) ....................................10

**Statutes**

Louisiana Revised Statutes § 13:4231 ...............................................................................8, 10

Louisiana Revised Statutes § 51:1401 *et seq.* ................................................................. *passim*

**Other Authorities**

Fed.R.Civ.Pro. 12(b)(6) ........................................................................................................6, 7

Fed.R.Civ.Pro. 12(c) .............................................................................................................1, 6

Fed.R.Evid. 201(b) .....................................................................................................................7

Restatement (Second) of Judgments ......................................................................................11

## I.     INTRODUCTION

This is a simple patent case, and nothing more.  Plaintiffs want it to be more, having included breach of contract and state-law unfair competition claims in their complaint.  But these non-patent claims have already been heard by a Louisiana state court, and finally decided once and for all.  They are thus barred by res judicata and never should have been brought.  As much can easily be discerned from the pleadings here and the pleadings from previous cases, which the Court may properly take judicial notice of in deciding this Rule 12(c) motion to dismiss.

In light of these pleadings, the plaintiffs cannot credibly dispute that the elements of res judicata are established:  (1) the previous judgment is valid and final; (2) the parties are the same; (3) the breach and unfair competition claims asserted here concerning the hard-top cups existed at the time of the previous judgment; and (4) the claims arose out of the exact same transaction or occurrence—namely, the two identical contracts that were at issue in the previous case and are attached to the complaint here.  In fact, the only relevant difference between this case and the previous case is the asserted patent, which admittedly issued after the final judgment in the previous case.  But the asserted patent has nothing to do with the two contracts—which have long-since been terminated and concerned only proprietary information obtained during their term—and thus does not change the res judicata effect of the previous judgment.  And to the extent that the plaintiffs' real allegation here is that its new post-judgment patent rights somehow create new claims for breach and unfair competition, the claims are wholly implausible and should be dismissed under *Iqbal/Twombly* and their progeny.

For these reasons, as explained in detail below—and in an effort to reduce this case and its associated burden on the parties and this Court—defendants respectfully request that the Court grant the instant motion and thus limit this case to what it is really about:  the asserted United States patent, and that patent alone.

## II.   FACTUAL BACKGROUND

### A.   The Previous State Court Litigations

Although the plaintiffs ("LNC") and defendants ("Mayborn")[1] are competitors in the baby products industry, they entered into two related distribution agreements—one in 2003 and one in 2008—in which Mayborn agreed to help LNC by distributing certain LNC products in the limited territories of the United Kingdom, Ireland, and Gibraltar. (Compl. ¶17.)   These two agreements are attached to the complaint as Exhibits B and C, respectively.   Unfortunately, the relationship deteriorated, the agreements were terminated, and LNC sued Mayborn in Louisiana state court for breach and unfair competition—twice.

**The First Louisiana Action (*LNC I*).** The first case was filed on May 24, 2010.[2]   In it, LNC based its breach and unfair competition claims on allegations that Mayborn had sold and was selling "child and baby products" that were supposedly "closely similar to" LNC's product designs. (Ex. A., Initial Petition ¶¶ 13, 15.)   Specifically, LNC alleged that Mayborn's commercialization of these products were violations of paragraphs 15B and 19 of the 2008 agreement concerning LNC's confidential information and proprietary product designs (Ex. A, 05/24/10 Initial Petition ¶¶ 4-6, 11) and paragraphs 18 and 21 of the 2003 agreement (Ex. B, 05/11/11 Supp. & Am. Petition ¶ 4-6, 14).

As evidence of the offending products, LNC attached to the Initial Petition an April 22,

---

[1] Although there are two plaintiffs (Luv 'n Care Limited and Admar International, Inc.) and two defendants (Jackel International Limited and Mayborn USA, Inc.), for convenience we refer to them as LNC and Mayborn, respectively, except where there is a relevant distinction to be made.

[2] The initial *LNC I* petition (complaint) in Louisiana state court alleged a breach of the 2008 distribution agreement along with a claim under Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), LA R.S. 51:1401 *et seq*. (Ex. A, 05/24/10 Initial Petition ¶¶14-15.) The initial petition also named Jackel International Limited as the lone defendant. (*Id*. ¶ 1.)  LNC later added a claim for breach of the 2003 distribution agreement and certain of Jackel's affiliates, including Mayborn USA, as defendants. (*See* Ex. B, 03/11/11 Supp. & Am. Petition ¶ 14; Ex. C, 02/29/12 Second Supp. & Am. Petition ¶¶ 19-20, 23-26.)  Unless otherwise noted, exhibit citations refer to the exhibits identified in the Supporting Declaration of John S. Goetz.

2010 cease-and-desist letter from LNC to Mayborn, in which LNC identified (by way of 12 attached exhibits) certain offending Mayborn products. (*See id.* ¶ 11 and Exhibit B to the Initial Petition.)  One of those products actually depicts a cup in Mayborn's EXPLORA hard top cup line, which is the very same line of products that is accused here:



(Ex. A, Initial Petition at Ex. B#6.)  Mayborn's hard-top cups, which comprise the EXPLORA line of products defined in the complaint here as the "Accused Products" have been sold in the United States since mid-2009. (Answer ¶26.)  Although LNC originally sought to include these hard-top cups in the *LNC I* case, it dropped those allegations during discovery as Mayborn explained in a pre-trial motion *in limine* in *LNC I*:

> Exhibit 6 [[to the initial petition in *LNC I*, seen above]] depicts a hard top cup product.  During discovery, Luv N' Care was asked to provide samples of all Accused Products.  Luv N' Care did not provide any samples of a hard top cup product.  Moreover, Luv N' Care did not refer to the hard top cup products in its discovery responses, and to the contrary, purported to exclude the hard top

3

> cup from Luv N' Care's claims. [*See* Luv N' Care's Amendment to Discovery, Oct. 11, 2010 (stating that "Exhibit 6 and 7 are excluded from Plaintiff's claim or are covered elsewhere on other Exhibits."), excerpts attached hereto as Exhibit 2]."

(Ex. D, 09/05/12 Mayborn Motion *In Limine* to Exclude Evidence Related to Products that Are No Longer At Issue) (double brackets added, single brackets original).  LNC did not oppose that motion, and it was granted. (Ex. E, 12/05/12 Ruling on Motions *in Limine*.)  After thus having limited the *LNC I* case during discovery to just three Mayborn *non* hard-top products (namely, its soft-spout, flip-top, and straw cups), the case proceeded to trial in Louisiana state court.

On the day before trial began, however, LNC attempted to reinsert one of the hard top cups (which have particular valves) back into the case, claiming that LNC "always maintained that the products with the valve in them are in this case and they still are with [sic] our respectful position [sic]." (Ex. F, 01/28/13 Trial Tr. at 17.)  But in part because "this product has been around for years" as the Court noted (*id*. at 15), LNC's eve-of-trial proposed reinsertion was rejected (*id*. at 19).

After a six-day jury trial, on February 7, 2013 the jury returned a verdict for LNC, finding that Mayborn breached the distribution agreements and violated LUTPA by selling its soft-spout, flip-top, and straw cups. (Ex. G, 02/07/13 Jury Verdict.)

**The Second Louisiana Action (*LNC II*).**  Then, on May 3, 2013—before the *LNC I* final judgment—LNC filed a second state court action in which LNC alleged that Mayborn's sales of "additional products" breached the same agreements and violated the same Louisiana unfair competition laws. (Ex. H, 05/03/13 Petition ¶ 19.)  These "additional products" (images of which were attached to the petition as Exhibits 3-14), are the very same hard top EXPLORA cups that were abandoned in *LNC I* and that are accused here in the instant case. (*See* Ex. H, 05/03/13 Petition at Ex. 3-14; *see also* Compl., ¶¶ 26-27.)  Indeed, Exhibit 6 to the *LNC II* petition depicts

the exact same cup as Exhibit B#6 to the *LNC I* petition. (*Compare* Ex. A at Ex. B#6 *with* Ex. H at Ex. 6.)

Mayborn removed *LNC II* to federal court.  In its motion for remand, LNC explained that, with respect to Mayborn's EXPLORA hard spout cups in *LNC II* "the thrust of Defendants' wrongful actions centers around the valve that is common to each of the products accused of breaching the contracts" and that "Defendants' valve is central to LNC's claims" in that case. (Ex. I, 07/10/13 Brief in support of Plaintiffs' motion to remand.)  But when LNC's remand motion was denied, LNC voluntarily dismissed its case.

Three weeks *after LNC II* was filed, the court in *LNC I* entered final judgment—on May 22, 2013.  The final judgment found that Mayborn had "breached the 2003 and 2008 Distribution Agreements with respect to [Mayborn's] (1) soft spout cups; (2) flip-top cup; and (3) straw cup." (Compl., Ex. A, 05/22/13 Final Judgment.)

Nearly a year later, on April 15, 2014, the asserted '841 patent[3] issued and Mayborn filed a declaratory judgment action for non-infringement in Massachusetts on that same day.  After that case was voluntarily dismissed without prejudice, LNC filed this suit.

## B.     The Complaint and Attached Contracts

This suit includes counts for patent infringement (Count III), breach of contract (Count I), and violations of LUTPA (Count II).  With respect to the breach claim, the complaint alleges that the "commercialization, promotion, advertising, and sales" of Mayborn's EXPLORA hard top cups "violate the terms of the Agreements and are used without LNC's permission." (Compl. ¶ 28.)  With respect to the LUTPA claim, the complaint alleges that these same activities "are willful and designed to take unfair advantage of Defendants' prior business relationship with Plaintiff LNC under the terms of the Agreements." (Compl. ¶ 46.)  In paragraphs 18-20 of the

---

[3] United States Patent No. 8,695,841.

complaint, LNC alleges that Jackel promised not to copy, imitate, utilize, disclose, or use certain LNC information and designs. (Compl. ¶¶ 18-20.)  The actual contracts themselves—which are attached to the complaint—unambiguously demonstrate, however, several important characteristics about these promises.  First, the contracts show that these promises all relate to "proprietary" information and designs.  In other words, information and designs for which LNC can legitimately claim some exclusive ownership right.  In addition, the contracts make clear that these promises either: (1) failed to survive contract termination and related only to proprietary information and designs (Compl. Ex. B ¶ 18; Compl. Ex. C ¶ 15B) or (2) related only to proprietary information and designs "obtained during the term" of the contracts (Compl. Ex. B ¶ 21; Compl. Ex. C ¶ 19).  Nothing in either contract suggests that any agreement was made concerning any proprietary designs LNC may later acquire post-termination, such as those embodied in the asserted patent.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c).  A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation omitted).  The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  Thus, as with a motion to dismiss under Rule 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

Judgment is appropriate if there are no disputed issues of fact and only questions of law remain. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998).

In ruling on a Rule 12(c) motion, courts may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir.2011) (discussing Rule 12(b)(6)); *see also Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000).   Courts may take judicial notice of matters of public record and pleadings. *Hall v. United States*, No. CIV. A. 6:06–CV–528, 2008 WL 276397, at *3 n. 5 (E.D. Tex. Jan.30, 2008) (taking judicial notice of documents from a prior litigation in deciding a motion to dismiss based on *res judicata*); *see also* Fed.R.Evid. 201(b).

## IV.   ARGUMENT

With these standards in mind, LNC's non-patent claims should be dismissed.

### A.   It Is Appropriate, Fair, and Efficient to Dispose of LNC's Non-Patent Claims Now

As an initial matter, limiting this case now to what it actually is—a patent case—will promote judicial efficiency, focusing the parties and the Court on the only real dispute and avoiding burdensome discovery on breach and unfair competition claims that, simply put, are not viable.  And because the still-born nature of these claims can be readily discerned from either the pleadings in this case or from indisputable facts that may properly be judicially noticed from the pleadings of the parties' prior cases, disposing of these claims on a motion to dismiss is perfectly appropriate.   Finally, disposing of these claims now is only fair:   LNC already had an opportunity to litigate its breach and LUTPA claims, and it should get only one bite at the apple.

### B.     Res Judicata

Imposing this notion of fundamental fairness is the very purpose of res judicata, which is an absolute bar to LNC's non-patent claims. *See Lemonds v. St. Louis County*, 222 F.3d 488, 495 (8th Cir. 2000) ("res judicata is largely a matter of common law and involves the impropriety of permitting parties to have "two bites at the apple[.]")  We turn to that doctrine now.

### 1.     Louisiana's Res Judicata Law Applies

In doing so, the first question, choice of law, is well settled: "A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Prod. Supply Co. v. Fry Steel, Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) (quoting *E.D. Systems Corp. v. Southwestern Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir.1982).)  We thus apply Louisiana law.

### 2.     Under Louisiana Law, Plaintiffs' Breach of Contract and LUTPA Claims Are Barred by Res Judicata

Louisiana Revised Statutes § 13:4231 states in relevant part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent: (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

The Louisiana Supreme Court has held that a second action is precluded under this statute when each of the following elements are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the causes of action asserted in the second suit existed at the time of final judgment in the first suit; and (5) the causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.  *Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2003).  All of these elements are satisfied here.

a.      **The Previous Judgment Is both Valid and Final**

The first two elements are satisfied because the state court entered a valid and final judgment in *LNC I*.  A *valid* judgment is one "rendered by a court with jurisdiction over both the subject matter and the parties after proper notice was given."  *Burguieres*, 843 So. 2d at 1053 (citing La. Rev. Stat. Ann. § 13:4231)).  A *final* judgment is "one that disposes of the merits in whole or in part." *Id.*  Both elements are present.  Jurisdiction was proper, given both contracts' forum selection clauses of Louisiana (Compl., Ex. B, 2003 Agreement ¶16 and Ex. C, 2008 Agreement ¶14) and that the judgment finally resolved (1) LNC's breach of contract claims, (2) the LUTPA claims, and (3) Mayborn's defenses. (Compl., Ex. A, 05/22/13 Final Judgment).

Moreover, the previous May 22, 2013 final judgment in *LNC I* "became res judicata and conclusive between the parties *when it was rendered*"—even though it was at that time still "subject to modification by a higher court on direct review." *Tolis v. Bd. of Supervisors of La. State Univ.*, 660 So. 2d 1206, 1207 (La. 1995) (emphasis added); *see also Segal v. Smith, Jones & Fawer, L.L.P.*, 838 So. 2d 62, 66 (La. Ct. App. 4th Cir. 2003) ("Although SJF argues that the September 12, 2001 judgment is currently on appeal before the First Circuit, the judgment is final for res judicata purposes unless it is reversed on appeal and was, therefore, final at the time the Civil District Court judgment was rendered."); *Energy Dev. Corp. v. St. Martin*, 296 F.3d 356, 361 (5th Cir. 2002) (applying Louisiana law).

b.      **The Parties Are the Same**

The third requirement for res judicata is plainly satisfied as well, as the plaintiffs and defendants in *LNC I* overlap with those here.

The addition in this case of plaintiff Admar International—the parent corporation that owns LNC—does nothing to change this simple analysis.  The complaint alleges that Admar is the owner of the patent at issue in Count III and that is thus the reason it is a plaintiff here. (*Id.* ¶ 30.)  And the breach of contract and state law unfair competition claims belong to LNC alone.

(Compl. ¶¶ 15-16 (explaining that the 2003 and 2008 agreements were contracts between LNC and Jackel).  In any event, the preclusive effect of the prior judgment cannot be avoided by simply adding a corporate affiliate as a plaintiff. *See Smith v. Parish of Jefferson*, 889 So. 2d 1284, 1287 (La. Ct. App. 5th Cir. 2004) (An "identity of the parties" for *res judicata* exists whenever "the same parties, their successors, or others appear, so long as they share the same quality as parties or there is privity between the parties"); *Zatarain v. WDSU Television, Inc.*, Civ. A. No. 94-1018, 1995 WL 295317, at *3 (E.D. La. May 8, 1995) (held a parent company and wholly-owned subsidiary are legally identical for *res judicata* purposes because they have identical interests and share the same position as parties); *Forum for Equality PAC v. McKeithen*, 839 So. 2d 738, 745 (La. 2005) (res judicata barred claims of additional plaintiffs because their interests were "closely aligned with" and "adequately represented by" the plaintiff in the first suit).

### c.   The Claims Here Existed at the Time of Final Judgment

The fourth element is also satisfied because LNC's breach and LUTPA claims asserted in this case over Mayborn's EXPLORA hard top cups existed when the final judgment was rendered in *LNC I*.  Of this, there can be no question.

Section 13:4231 covers "all causes of action existing *at the time of final judgment*."  La. Rev. Stat. Ann. § 13:4231 (emphasis added).   "[T]o determine whether a cause of action previously existed, [the Court] must consider when the cause of action arose or accrued." *Hugel v. Se. La. Flood Prot. Auth.-E.*, 429 F. App'x 364, 368 (5th Cir. 2011) (applying Louisiana law). Here, LNC's claims about Mayborn's EXPLORA hard-top cups accrued well before the *LNC I* state court entered final judgment on May 22, 2013.

As explained above, LNC filed its petition in *LNC I* in May 2010 and amended its petition twice.  LNC even *raised* claims over the EXPLORA hard top cups three times before the

May 22, 2013 final judgment:  first, in its initial petition, second, on the eve of trial, and then again in a second lawsuit (*LNC II*)—filed nearly three weeks before final judgment.  *See, e.g.*, *Buck v. Deutsche Bank Nat'l Trust Co.*, No. 05-2986, 2006 WL 1968863, at *3 (E.D. La. July 12, 2006) ("Buck filed the present action before she voluntarily dismissed her state court action, so the causes of action pled here existed at the time of final judgment.").  Thus, LNC's claims about the EXPLORA hard-top cups could have been—and in fact were—asserted in *LNC I*. They also could have been asserted in either of the March 11, 2011 or April 5, 2012 petition amendments in *LNC I*.  There simply is no question that LNC knew of these claims and could properly have asserted them before the *LNC I* final judgment.

### d.   The Claims Here Arose Out of the Same Transaction or Occurrence

The final element is satisfied because Plaintiffs' breach and LUTPA claims over the EXPLORA hard-top cups arise out of the same transaction or occurrence as that in *LNC I*.

Louisiana courts use the "broad and liberal interpretation" that federal courts have given the phrase "transaction or occurrence"—all logically related events entitling a person to institute legal action against another arise out of the same transaction or occurrence.  *Hy-Octane Inv., Ltd v. G & B Oil Prods., Inc.*, 702 So. 2d 1057, 1060 (La. Ct. App. 3d Cir. 1997); *see, e.g.*, *Gladney v. Am. Heritage Life Ins., Co.*, 80 F. Supp. 2d 594, 598 (W.D. La. 1999) (applying Louisiana law).  There is no one-size-fits-all test for same "transaction or occurrence."  *Travcal Props., LLC v. Logan*, 49 So. 3d 466, 471 (La. Ct. App. 3d Cir. 2010).  Some courts use the "transactional" approach of the *Restatement (Second) of Judgments*, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *See, e.g.*, *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 943 So. 2d 429, 439-40 (La Ct. App. 1st Cir. 2006).  Others borrow from the

federal court test for compulsory counterclaims:  They ask whether the issues of fact and law raised by the claims are largely the same, whether substantially the same evidence will support or refute the claims, and whether there is any logical relationship between the claims.  *See, e.g.*, *Durkin v. Quest, Inc.* 724 So. 2d 868, 870-71 (La. Ct. App. 5th Cir. 1998). The current breach and unfair competition claims unquestionably arise out of the same transaction or occurrence under all of these formulations.

For starters, the contracts at issue here are identical to those at issue in *LNC I*.  In both this case and *LNC I,* LNC alleged that Mayborn breached the 2003 and 2008 agreements and violated LUTPA by selling EXPLORA hard top cups.  And courts have routinely explained that, "[w]here there is a legal relationship such as [] a lease or contract, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata."  *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 907 (5th Cir. 2011) (applying Texas law) (quotation marks and citation omitted); *see also Brennan's, Inc. v. Brennan*, 377 F. Supp. 2d 579, 584 (E.D. La. 2005) ("[A] contract is generally considered to be a single transaction for purposes of claim preclusion.") (*quoting* 18 J. Moore et al., *Moore's Federal Practice* § 131.23[1] (3d ed. 1997)); *Hy-Octane Inv.*, 702 So. 2d at 1061 ("Hy-Octane's claim for breach of the motor fuel supply agreement arises out of the same contract that G & B asserts was wrongfully terminated by Hy-Octane . . . .  This clearly involves the same transaction or occurrence, the contract, that is the subject matter of G & B's suit."); *Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co.*, 649 So. 2d 86, 89 (La. Ct. App. App. 4th Cir. 1994) (rev'd on other grounds) (holding that because the claim "arose from the same contract (i.e., the same transaction), the 'same cause of action' element is met and Terrebonne's suit is barred.").[4]

---

[4] *See also Hanley v. Aperitivo Rest. Corp.*, No. 97 CIV. 5768, 1998 WL 307376, at *5 (S.D.N.Y. June 11, 1998) ("Insofar as the Funds now seek to recover additional contributions, their claims arise out of the same contract and are therefore subject to the doctrine of res judicata."); *James B. Day & Co. v. Reichhold Chems., Inc.*, 60 F.R.D. 387, 390 (N.D. Ill. 1973) ("Further, the

But the connection between the claims here and those in *LNC I* extends far beyond the fact that they all stem from the same contractual relationship.  First, the claims in each case are directed to Mayborn's sale of baby products allegedly resembling LNC's products in breach of the two distribution agreements. (*Compare* Compl. ¶¶26-28 *with LNC I* Petition ¶¶8-13.) Further, the alleged breach and LUTPA violations here involve the same type of products that were at issue in the previous case:  sippy cups.  The claims in the two suits would have formed a convenient trial unit, all requiring an interpretation of identical contract language and an examination of the similarities between various cups.  *See Brennan's Inc. v. Brennan*, 377 F. Supp. 2d 579, 585 (E.D. La. 2005).  Finally, at its most basic level, both suits are motivated by LNC's attempt to stop Mayborn from gaining a competitive marketplace advantage. *See id.*

Based on those facts, there can be little question that the instant case and *LNC I* are "so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit." *Hy-Octane Inv.,* 702 So. 2d at 1060 (quotation marks and citation omitted).

\*       \*       \*

For these reasons, res judicata bars LNC's breach and LUTPA claims here.

**C.      To the Extent LNC Is Asserting that Its Recently Issued Patent Creates New Breach of Contract and LUTPA Claims, the Claims Are Wholly Implausible Under *Iqbal/Twombly***

As a final matter, we now turn to the only possible theory under which LNC might believe its breach of contract claims and LUTPA claims are not barred by res judicata:  that these claims did not exist until the asserted patent issued on April 15, 2014 and thus could not have been brought until after that date.  If this is LNC's true theory, it is implausible.

---

counterclaim arose out of the same transaction or occurrence as the plaintiff's complaint, namely, the contract between the parties."); *AMEC Civil, LLC v. State, Dep't of Transp.*, 41 So. 3d 235, 243 (Fla. Dist. Ct. App. 2010) ("We perceive no justification for departing from the general rule that all claims arising out of the same indivisible contract constitute the same cause of action for purposes of res judicata.").

To avoid dismissal, "a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).   In the Fifth Circuit, after identifying the factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (emphasis added, internal quotations removed) (citing *Iqbal*, 556 U.S. at 678-79).

**Breach of Contract.**   Under Louisiana law, "[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So.3d 1099, 1108–09 (La. Ct.App. 4 Cir.2011); *see also Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So. 2d 426, 427 (La. App. 4th Cir. 1986); *Hercules Machinery Corp. v. McElwee Bros., Inc.*, 2002 WL 31015598 at *9 (E.D. La. 9/2/02) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages."). Thus, in this case, under a theory where the alleged patent infringement also resulted in a post-termination breach of contract, LNC must show two things.   First, LNC must show that the allegedly breached obligation—whatever it is—survived termination of the contract.   Second, LNC must show that the surviving obligation relates to new proprietary rights obtained by LNC post termination.   LNC cannot make either showing.

The only two provisions in the agreements that survived termination were paragraph 21 of the 2003 contract and paragraph 19 of the 2008 contract, which thus form the sole basis for any post-termination breach.   But those provisions unambiguously require that a "party shall not disclose . . .   or make use of . . . knowledge or information which either party ***obtains or obtained during the term of this Agreement*** with respect to . . . ***proprietary designs or***

14

*information [of LNC]*[5]. . . ." (Compl. Ex. A ¶ 21 and Compl. Ex. B ¶ 19, emphasis added.) As such, these paragraphs apply only to information concerning proprietary rights existing and obtained *during* the contract term, not after. Thus, this breach of contract theory is not plausible and should be dismissed as a matter of law.

**LUTPA.** Without a breach, the LUTPA claim also fails. Indeed, the Louisiana Supreme Court has held that "the [LUTPA] statute does not provide an alternate remedy for simple breaches of contract" and has explained that "[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Cheramie Serv. V. Shell Deepwater Product*, 35 So. 3d 1053, 1059 (La. 2010).[6] LNC cannot, under any theory, show conduct that "offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious" and that likely explains why no such conduct has even been alleged in the complaint. (*Id.* at 1060.) For that reason, and because any patent infringement conduct (of which there is none) in this case is solely due to business practices, business judgment, and the operations of free enterprise, there can be no LUTPA violation as a matter of law. *Cheramie Serv.*, 35 So. 3d at 1059 (holding that LUTPA does not prohibit or punish "sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions."). Thus, the LUTPA claims also fail and should be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their motion to dismiss LNC's breach of contract and LUTPA claims.

---

[5] The 2003 agreement referred here to "proprietary designs or information of the other party[,]" whereas the 2008 agreement referred here to "proprietary designs or information of LNC[.]"

[6] *See also Bolanos v. Madary*, 609 So.2d 972, 977 (La.App. 4 Cir.1992), writ denied, 615 So.2d 339 (La. 1993) (Defendant's letters to government agencies did not fall to level of unethical, oppressive, unscrupulous, or substantially injurious practice and thus, did not constitute unfair trade practice under LUTPA.).

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  December 22, 2014

By: */s/ John S. Goetz*

John S. Goetz (admitted *pro hac vice*)
601 Lexington Ave., 52nd Floor
New York, NY 10022
Telephone:  (212) 765-5070
Facsimile: (212) 258-2291

Jane J. Du
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091

*Counsel for Defendants Jackel International
Limited and Mayborn USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on December 22, 2014, to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jane Du*

Jane Du
