**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC. | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 2:14-cv-00855-JRG |
| | § | |
| v. | § | |
| | § | |
| JACKEL INTERNATIONAL LIMITED and MAYBORN USA, INC., | § | |
| | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Luv N' Care, Ltd. and Admar International, Inc.'s (collectively, "LNC") Motion to Stay (Dkt. No. 67).  Defendants Jackel International Limited and Mayborn USA, Inc.'s (collectively, "Jackel") opposes the motion.  After considering the parties' written submissions, the Court finds that the Motion should be and is hereby **DENIED**.

### I.      Background

The Court has already refused to stay this case once.  That Order (Dkt. No. 22) lays out the background of the case, which will not be completely repeated here.  Interestingly, it was Jackel that requested the stay on the first occasion with LNC opposing.  The situation is now reversed.

On November 10, 2014, this Court denied Jackel's Request for a Stay, which it requested because of a then pending appeal before the Federal Circuit in the *Philips* Case.  (*See* Memorandum Opinion and Order, Dkt. No. 22).  LNC opposed that request.  Now that the *Philips* appeal has been resolved, LNC has moved for a stay and Jackel opposes the request.

1

Perhaps a little background will shed some light on why the parties have now reversed their positions.

On December 12, 2011, LNC filed a lawsuit in the Eastern District of Texas against Koninklijke Philips NV (the *Philips* Case) asserting infringement of five United States Patents that trace their roots to LNC's U.S. Patent No. 6,321,931 (the parent '931 patent).  The parent '931 patent, entitled a "No-spill drinking cup apparatus," discloses "[a]n improved no-spill cup construction and valve assembly which provides an extremely secure seal against accidental liquid flow from the cup spout."  U.S. Patent '931 [57].

The '931 patent has already been litigated in the Western District of Louisiana (the Louisiana litigation).[1]  In the Louisiana litigation, the court found that the claim term "opening" from the '931 patent was not as broad as claimed because the inventors made specific disclaimers in the prosecution history of the '931 patent ('931 disclaimer).  With much of the scope disclaimed, the Louisiana court found that the alleged product did not infringe the '931 patent.  The Court in the alternative went on to say that "were the court not to construe the patent in this manner, then the invalidity of the . . . patent '931 is assured."  *Hakim v. Cannon Avent Grp., PLC*, No. CIV.A. 3-02-1371, 2005 WL 1793760, at *6 (W.D. La. May 4, 2005) *aff'd*, 479 F.3d 1313 (Fed. Cir. 2007).

The claim term "opening"—and the accompanying '931 disclaimer—are at the heart of the current dispute.  In the face of the adverse ruling in the Louisiana litigation,  the inventors of the '931 patent applied for and were granted several child patents, five of which are at issue in the *Philips* Case and one of which—U.S. Patent No. 8,695,841 (the "'841 patent")—is at issue in

---

[1] *Hakim v. Cannon Avent Grp., PLC*, No. CIV.A. 3-02-1371, 2005 WL 1793760 (W.D. La. May 4, 2005) *aff'd*, 479 F.3d 1313 (Fed. Cir. 2007).

2

the current action.  LNC contends that the '931 disclaimer (and claim limitation) found in the parent '931 patent was rescinded during the prosecution of the child patents, and particularly during the prosecution of the patent in issue in this case—the '841 patent.

This Court issued a claim construction ruling in a related case—the *Philips* Case—on July 9, 2013, finding among other things that the same disclaimer concerning the parent '931 patent from the Louisiana litigation was not rescinded but applied to the five child patents in the *Philips* Case.  This disclaimer led LNC to concede that the accused Philips product did not infringe under the Court's interpretation.  The parties filed a Joint Motion for Entry of Judgment of Non-Infringement, and LNC appealed the Court's claim construction ruling to the Court of Appeals for the Federal Circuit.

At the Federal Circuit, LNC filed its opening appeal brief on May 23, 2014, arguing that this Court had erred in finding that the '931 disclaimer applied to the five child patents because that disclaimer had been rescinded.  On December 11, 2014, the Federal Circuit disagreed with LNC and affirmed the judgment of this Court.

LNC claims that "[a]s a result of the Federal Circuit affirmance," the patentee submitted an application to reissue the '841 patent-in-suit, which is another child patent of the parent '931 patent.  (Mot. at 4).  LNC contends that the reissue application will show that the disclaimer is and was rescinded for the '841 patent-in-suit.

## II.    Applicable Law

"The district court has the inherent power to control its own docket, including the power to stay proceedings."  *Soverain Software LLC v. Amazon, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005) (citations omitted).  Management of the court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Landis v. N.*

3

*Am. Co.*, 299 U.S. 248, 254 (1936).  In striking that balance, courts typically consider three factors: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify issues in question and trial of the case, and; (3) whether discovery is complete and whether a trial date has been set.  *Soverain Software LLC*, 356 F.Supp.2d at 662.  "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on those factors."  *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-00081, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

### III.    Discussion

LNC has been aware of the alleged defects in its patent since at least 2013, and arguably as early as 2007.  Yet, in the face of this Court's ruling in the *Philips* Case in 2013, LNC filed another lawsuit against another defendant asserting a patent in the same patent family; a family that is potentially burdened by the same patent disclaimer as found in the *Philips* Case.  Now LNC—apparently surprised by the Federal Circuit's decision to affirm this Court's prior opinion in the *Philips* Case—wants to stay the present case while it goes back to the Patent Office to obtain a reissue certificate that LNC hopes will correct the alleged defect which this Court found (for a related sibling patent) nearly two years ago.  LNC's version of these facts is that the timing of these decisions were not made with any tactical or strategic motives in mind, but that they are merely a fortuitous set of circumstances that serendipitously led this case to its current posture. The Court is wholly unconvinced.

### i.    First Factor

A stay in this case would provide a clear tactical advantage to LNC, the party requesting a stay.  On November 18, 2014, this Court issued the Docket Control Order for this case (Dkt. No. 28).  That Order required that initial and additional disclosures be made by November 24,

2014, invalidity contentions be made by December 22, 2014, and among other things, claim construction discovery be completed by April 30, 2015.

After LNC received Defendants' prior art and invalidity contentions, LNC filed an *ex parte* reissue application with the Patent Office. LNC then put that prior art before the Patent Office in its *ex parte* proceeding, arguing it was obligated to do so by its "duty of candor." The Court does not disagree with LNC's decision to cite the prior art, but the Court finds the timing suspiciously convenient for LNC. If this stay is granted, Jackel's invalidity defense will, in essence, first be heard by the Patent Office during an *ex parte* proceeding, the prior art will be cited on the patent, and the patent will be essentially shielded from invalidity challenges based on that prior art. LNC was solely in control of: the timing of the filing of the appeal, the filing of this action, the decision to oppose the first stay, and the timing of the reissue application. The Court does not believe that the new prior art uncovered by the Defendants somehow accidently but fortuitously ended up at the Patent Office. LNC is responsible for its choices and its actions. A stay would secure an unfair tactical advantage to the moving party.

In response, LNC argues that its course of conduct was "reasonable" because it needed to wait until the Federal Circuit appeal was finalized before filing a reissue application. The Court does not agree. The Federal Circuit appeal involved *a different patent*. LNC could have waited to file this second case until the appeal was resolved. LNC could have filed its reissue application immediately. LNC could have acquiesced in the first stay. Had LNC taken any of these alternative actions, it would not have positioned itself to gain an unfair tactical advantage. Instead, it chose the above recited course of action.

5

### ii.      Second Factor

A stay will not simplify the issues now in question.   LNC argues that if the Federal Circuit had reversed the judgment in *Philips* on the basis that the disclaimer had been rescinded in one or more of the five related patents, then that would simplify the present case.  (Mot. at 6).  That did not happen, so that point is moot.   Next, LNC argues that "[i]f the present case were to proceed, this Court will have to determine whether the '931 prosecution [sic] disclaimer has been rescinded under the Federal Circuit law and in view of the ruling in the *Philips* case."  (Mot. at 6).   LNC then proceeds to argue (and spends nearly its entire reply brief arguing) its claim construction positions.  (Dkt. No. 71).   Arguing for alleged simplification, LNC then says that the "difficult patent issue" of claim construction "can be completely avoided" by a stay.[2]  (Mot. at 7).   The Court is well-equipped to construe patent claims at the *Markman* stage.   A motion for a stay is not the appropriate time to argue claim construction positions.   LNC wholly fails to show that the case would be simplified by its request for a stay.

Furthermore, Jackel points to numerous issues that will be complicated by the reissue proceeding.   For example, the question of intervening rights.   Under 35 U.S.C. § 252, the Court, in essence, would be required to construe *both* the original patent and the reissue patent to determine whether the scope of the claims is changed by the reissue certificate.   If the scope of the claims is changed, the alleged infringer who relies on the original scope of the patent may have intervening rights to practice the reissued claims.   These types of issues do not simplify the case.

---

[2] LNC selectively quotes a Federal Circuit opinion to support its position: "there is a likelihood that all of the asserted claims will be invalidated . . . [and even if found otherwise,] this case will still be simplified as this Court will not have to resolve the Section 101 defense." *Benefit Funding Sys. LLC v. Advance Am. Cash Advance Centers Inc.*, 767 F.3d 1283, 1385, 1387 (Fed. Cir. 2014).  LNC does not even hint at the idea that the reissue will result in its patent being invalidated or dismissed on Section 101 grounds.

### iii.    Third Factor

Third, claim construction discovery is complete and a trial date has been set.  (*See* Docket Control Order, Dkt. No. 28).   The *Markman* hearing is fast approaching and the case has been pending for over eight months.  This factor weighs against granting a stay.

### CONCLUSION

It is apparent that this party has engaged in efforts to game the system for their own stategic benefit. The above analysis reveals that none of the factors considered support granting a stay.  For the reasons set forth herein, LNC's Motion for a Stay is **DENIED**.

**So ORDERED and SIGNED this 15th day of May, 2015.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE