## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LUV N' CARE, LTD et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 2:14-cv-855 |
| | § | |
| JACKEL INTERNATIONAL LIMITED, et al. | § | |
| | § | |
| | § | |
| *Defendants.* | | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Rule 12(c) Motion to Dismiss (Dkt. No. 43). The motion seeks dismissal of Plaintiffs' breach of contract and state-law unfair competition claims, but does not address the patent infringement claims present in this suit. The Motion relies upon the defense of *res judicata* arising out of previous litigation between the parties in Louisiana's Fourth Judicial District Court. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

The parties to this case have a storied history. The following facts are substantially undisputed.

In 2003 and 2008, Mayborn and Luv N' Care (LNC) entered into two agreements whereby the parties would utilize common distribution channels to get LNC products into the limited territories of the United Kingdom, Ireland, and Gibraltar. (Compl. ¶ 17, Dkt. No. 1). At some point in or around 2010, the relationship between the two parties deteriorated, which spawned two lawsuits in Louisiana.

I.      First Louisiana Action (*LNC I*)

*LNC I* was filed on May 24, 2010. LNC alleged breach of contract and unfair competition claims on the basis that Mayborn had sold and was selling child and baby products that were closely similar to LNC's product designs. (Mot. at 2). According to LNC, this violated two paragraphs of the 2008 agreement concerning LNC's confidential information and proprietary product designs, as well as two paragraphs of the 2003 agreement. (*Id.*) As evidence of the Mayborn products that offended the contracts, LNC filed evidence with the Louisiana Court showing a cease-and-desist letter from LNC to Mayborn, which identified (among other things) EXPLORA hard-top cups as an offending product. (*Id.* at 3).

However, during discovery, it became apparent that LNC withdrew the hard-top cups from the case. (Resp. at 1, Dkt. No. 57). Taking the Plaintiffs' facts to be true, this withdrawal could be attributed to mistake, a (mis)representation from the Defendant, or some combination of both. (*Id.*) The withdrawal itself is evidenced by LNC's agreement to *liminie* out the hard-top cups during the Motions in Liminie stage, (mot. at 4), but is also evidenced by Plaintiffs' own argument that this was the case. (Resp. at 1–5). It is undisputed that the motion in *liminie* was unopposed by LNC and granted by the Louisiana court. (Mot. at 4). LNC's main argument, therefore, surrounds the factual nature of its mistake. (Resp. at 2–3).

At some point near the eve of trial, LNC tried to re-insert the hard-top cups (or a portion of them) back into the case. (Mot. at 4). That request was rejected by the judge, and the case proceeded to a six-day jury trial. (*Id.*) LNC prevailed, and Mayborn was found to have breached the distribution agreement and violated LUTPA by selling its non-hard-top cups—the only cups left in the case at that time. (*Id.*)

II.      The Second Louisiana Action (*LNC II*)

On May 3, 2013, before the *LNC I* final judgment was entered, LNC filed a second state court action in which LNC alleged that Mayborn's sales of "additional products" breached the same agreements and violated the same Louisiana unfair competition laws. (Mot. at 4). Taking the Plaintiffs' allegations as true, the hard-top cups were included in this list of additional products. (*Id.*) Mayborn removed *LNC II* to federal court. (*Id.* at 5). LNC filed a motion to remand, which was denied. (*Id.*) LNC subsequently dropped the case for the reason stated below. (*Id.* at 5).

Three weeks after *LNC II* was filed, the court in *LNC I* entered final judgment—on May 22, 2013. The final judgment found that Mayborn had breached the 2003 and 2008 agreements with respect to the cups actually at issue in the case, but not the hard-top cups that had been excluded by mistake, a misrepresentation by the Defendant, or otherwise. (*Id.* at 5). In lieu of pursuing an appeal of the *LNC I* litigation, the parties entered into a settlement agreement. (Resp. at 3). That settlement agreement contained a reservation of rights concerning *LNC II*. Specifically, that Settlement Agreement, attached as Exhibit E to Plaintiffs' Response, Dkt. No. 57-5, stated the following: "Nor shall anything within this Agreement be deemed a settlement or withdrawal of any claims or defenses between the LNC Parties and the Mayborn Parties relating to [*LNC II*] or the Threatened Hard Top Cups Action or the products accused therein, all rights with respect to which are expressly reserved by the parties hereto." (*Id.*)

Plaintiffs then argue:

> It is clear and obvious that the sole purpose of that reservation of rights by LNC was directed at the [hard-top cups] and their sales figures which LNC tried to get into [*LNC I*], and that LNC's right to appeal on the aforementioned [hard-top cups] . . . would have been addressed on appeal; thus, the right to litigate those items, which are the ones sought to have been a breach of the contract agreements between the parties in [*LNC II*] and also the same in the instant Texas action, was

in fact reserved. Counsel respectfully submits that there is no other reason for the said reservation of rights to have been part of the Settlements Agreements between the parties other than LNC's right to litigate said products.

In other words, it appears that Plaintiffs contend that had they not settled *LNC I*, they would have won the right to reinsert the hard-top cups back into *LNC I* on appeal.

III.     The Present Action (*LNC III*)

This suit includes counts for patent infringement, breach of contract, and violations of the Louisiana Unfair Trade Practices Act (LUPTA). (Dkt. No. 1). LNC alleges that Mayborn's EXPLORA hard top cups violate the terms of the 2003 and 2008 agreements and infringe the patent-in-suit, which issued on April 15, 2014—a year after judgment from *LNC I* was entered. Those agreements are attached to the complaint.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation omitted). The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Thus, as with a motion to dismiss under Rule 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

## ARGUMENT

Louisiana Revised Statutes § 13:4231 states in part:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent: (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

i.      *Elements of* Res Judicata

The Louisiana Supreme Court has held that a second action is precluded under the above statute when each of the following elements are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the causes of action asserted in the second suit existed at the time of final judgment in the first suit; and (5) the causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La. 2003).

Plaintiffs do not directly argue that the elements of *res judicata* are not met. Instead, Plaintiffs immediately note that "at first blush, it would seemingly appear that the defendants have the key elements to urge those defenses in an effort to remove the claims of breach of contract sought by the Plaintiffs; however, this case has a particular set of convoluted facts at issue." (Resp. at 6).

Turning first to the elements of *res judicata*, Plaintiffs are left to argue that "[t]he denial of the Louisiana court to make those sales figures [concerning hard-top cups] part of the First Louisiana case [i.e, *LNC I*] was in error *and thus would have been appealed*." (Resp. at 7). This argument does not refute any element of *res judicata* set forth by the Louisiana Supreme Court. In fact, on the legal principles, the Court agrees with the Defendants that all elements are met: (1) the judgment of the court in *LNC I* was valid; (2) said judgment was final; (3) for the purposes of these causes of action, the parties are the same; (4) the causes of action asserted in the present suit existed at the time of final judgment in the first suit; and (5) the causes of action

- 5 -

asserted in the present suit arose out of the same transaction or occurrence that was the subject matter of *LNC I*.  In fact, Plaintiffs go on to agree with this assessment: "Counsel for Plaintiff has no disagreement with the principles of *res judicata* and estoppels and the citations by Defendants who urged them[;] there is no necessity to discuss them further because Plaintiffs' defense rests solely with the exceptional circumstances caused by the convoluted facts." (Resp. at 10). The Court now turns to Plaintiffs' allegations concerning convoluted facts.

    *ii.*      *Defenses to* Res Judicata

The Plaintiffs main argument is that *res judicata* should not apply in this particular case because of the "particular set of convoluted facts at issue." (Resp. at 6). Plaintiffs' defense to *res judicata* is set forth in a personal injury case titled *Brouillard vs. Aetna Casualty & Surety Company*, 657 So.2d 231 (La.App. 3 Cir. 1995).

The Court finds that *Brouillard* is not applicable to the facts and circumstances presented here. Importantly, the court in *Brouillard* concluded that "[p]laintiff was unaware" of certain provisions requiring the plaintiff to seek attorney's fees. *Id.* at 233. This provision, the court found, was "collaterally related" to the prior case that would have acted as the foundation of *res judicata*. *Id.* at 233. The court said that "consequently, [the plaintiff] *did not seek to enforce*" those collaterally related provisions in the first action. *Id.* (emphasis added).

In the present case, after examining the evidence, the Court concludes that the LNC, in *LNC I*, *did seek to enforce* the exact issues now present before the Court. Although Plaintiffs spend pages discussing the alleged "mistakes" the LNC made in *LNC I*, *Brouillard* does not stand for the proposition that plaintiff's mistakes in litigation are excused. At best, *Brouillard* suggests a plaintiff's unawareness of a right she could have enforced is excusable. The Court finds, on this evidence, that LNC actually enforced the exact same claim in another case and then

- 6 -

dropped that claim from the case. Mistake or not, the Court is inclined to find *res judicata* applicable based on this voluntary action.

Finally, LNC's claim that the Settlement Agreement contractually reserved the right to assert the claim lacks merit for a similar reason. LNC lacked the exact right it sought to reserve at the time it sought to reserve that right, as evidenced above, and therefore could not have reserved the right it did not possess.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion (Dkt. No. 43) is **GRANTED**.


**So Ordered and Signed on this**

**Aug 8, 2015**


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE