IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LUV 'N CARE, LTD. and ADMAR<br><br>Plaintiffs,<br><br>v.<br><br>JACKEL INTERNATIONAL LIMITED and MAYBORN USA, INC.<br><br>Defendants. | Civil Action No.: 2:14-cv-00855-JRG |

**PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND
OPINION OF DEFENDANTS' EXPERT STUART B. BROWN
AND MEMORANDUM IN SUPPORT THEREOF**

**I. MOTION AND INTRODUCTION**

Plaintiffs Luv 'N Care, Ltd and Admar ("Plaintiffs") move, pursuant to Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592 (1993), for an order excluding the two expert reports and related opinions of Stuart B. Brown, the purported expert witness of Defendants Jackel International Limited and Mayborn USA, Inc. ("Defendants"). Dr. Brown intends to offer the opinions that (a) claims 1, 3, 5, 6 and 7 of U.S. Patent No. 8,695,841 (the '841 patent) are invalid as anticipated and obvious; (b) the invention claimed in the '841 patent was not properly disclosed in the written description; and (c) Defendants' accused products do not infringe claims 1, 3, 5, 6 or 7 of the '841 patent. However, the Federal Circuit has made it clear that where, as here, the issues call for consideration of evidence from the perspective of one of ordinary skill in the art, any witness testifying on these issues must be qualified as a technical expert **in that art**. *Sundance, Inc. v. Demonte Fabricating Ltd.,* 550 F.3d 1356, 1363 (Fed. Cir. 2008). Dr. Brown has no experience in the design or development of the no-spill cups at issue in the '841 patent to render an opinion of a person

skilled in that art, and hence cannot "help the trier of fact to understand the evidence or to determine a fact in issue" under Rule 702.  The fact that Dr. Brown's two children used no-spill cups some twenty years ago does not, by any means, qualify him as an expert in "sippy" cup design.

Dr. Brown's Expert Report on the issues of validity and written description dated September 10, 2015 is submitted herewith as Exhibit A, and his Expert Report on the issue of noninfringement dated September 28, 2015 is submitted herewith as Exhibit B.

## II.  STATEMENT OF FACTS

### A.  Dr. Brown's Background

It is clear from Dr. Brown's educational and employment background, that any expertise he may possess has no bearing on the design of the no-spill cups at issue here. Dr. Brown has various degrees, in English Literature, Business Administration, and Mechanical Engineering. (Appendix A to Ex. A p. 2.)  Dr. Brown was on the faculty of the Department of Materials Science and Engineering at M.I.T.; he was the director of an engineering and scientific consulting firm; and he co-founded the engineering consulting firm where he is currently employed.  (Ex. A p. 3.)  Dr. Brown's self-described "specific topics of expertise" include "strength of materials with subspecialties in plasticity, fracture, fatigue, elasticity, viscoelasticity and viscoplasticity, creep, and wear . . .."  (Appendix A. to Ex. A, p. 2.)  Dr. Brown has a number of patents (relating to, for example, energy harvesting, tissue and fluid sampling, bulge testing of films, coatings and/or layers, and footwear with multilevel activity meter)—none of which relates to the design of no-spill cups.  He has also authored or co-authored numerous publications (relating to, for example, the testing of polymers, motion energy harvesting, fatigue damage and slow crack growth)—none of which relates to the design of sippy cups.  (*Id.* pp. 3-

11.) In short, Dr. Brown has never been involved in the design, development or manufacture of no-spill cups or any product even remotely similar.

By his own admission, Dr. Brown's only experience with no-spill cups prior to being retained by Defendants is based on his own children's use of "sippy cups" some twenty years ago:

> I am also personally familiar with no-spill cups during the period of 1995 through 2002.  My first child was born in July of 1994, and my second was born in January of 1999.  I was the primary parent during portions of my children's childhoods.  I used Playtex Sippy Cups, purchased at Toys R Us, with both children. . . . I commonly would remove [the] valve holder [for the sippy cups] for washing and sterilization.

(Ex. A p. 13, at ¶¶ 44-46.)  In this respect, Dr. Brown's experience is no different than that of any parent who has taken apart a Playtex Sippy Cup or any other no-spill cup product with a no-spill valve for washing.  This hardly qualifies him as an expert in the art.

### B. Mr. Valderrama's Qualifications

By way of contrast, the expert retained by Plaintiffs to rebut the reports of Dr. Brown, Vincent J. Valderrama, has worked for several years in the field of no-spill cups that include a cap with a spout and a valve to prevent spillage.  He is a Senior Design Engineer with extensive experience in consumer products, especially drinking, or "sippy" cups for children, toddlers and infants.  He has a Bachelor of Science degree in Mechanical Engineering and worked for Playtex as a lead engineer on several programs that introduced new sippy cups to the market.  Mr. Valderrama is currently employed as a Senior Design Engineer with a private design consulting firm, where he continues to work in designing juvenile products for OXO.  (Ex. C, Excerpts from Mr. Valderrama's September 28, 2015 Rebuttal Report on Patent Validity, at ¶¶ 10-16, and Curriculum Vitae.)

### C.     Dr. Brown's Expert Reports

Dr. Brown's report dated September 10, 2015 states that he was asked to render an opinion on the validity of claims 1, 3, 5, 6, and 7 of the '841 Patent. (Ex. A p. 1.)  In his report, Dr. Brown opines that the asserted claims are invalid because they are "anticipated either by paper references or by products" and are "obvious when two or more examples of references or products are considered in combination . . .."  (*Id.* p. 2, at ¶¶ 4 and 6.)  Dr. Brown acknowledges that in order to render his opinion, the evidence must be considered from the perspective of "persons of ordinary skill in the art."  For example, in connection with the issue of anticipation under 35 U.S.C. § 102, he states "I have been informed that to establish . . . 'inherency,' the evidence must make clear that the missing descriptive matter is necessarily present in the item of prior art and that it would be so recognized **by persons of ordinary skill in the art** . . ..."  (*Id.* p. 6, at ¶ 21, emphasis added.)

In connection with the issue of obviousness under 35 U.S.C. § 103, Dr. Brown states, "I understand that in assessing the obviousness of claimed subject matter one should evaluate obviousness over the prior art **from the perspective of one of ordinary skill in the art at the time the invention was made** (and not from the perspective of either a layman or a genius in that art)."  (*Id.* pp. 6-7, at ¶ 22, emphasis added.  *See also id.* p. 8, at ¶ 26 (noting, in relation to the obviousness inquiry, that "the common sense, inferences, and creative steps that **a person of ordinary skill in the art** would employ should be taken into account.") (emphasis added); and ¶ 28 ("if a technique was used to improve a device or method, and if **a person of ordinary skill in the art** would recognize that the technique would improve similar devices or methods in the same way, using the technique is obvious unless applying it is beyond the person's skill.") (emphasis added); p. 9, at ¶ 30 ("familiar items may have obvious uses beyond their primary

4

purposes, and in many cases **a person of ordinary skill** will be able to fit the teachings of multiple patents together like pieces of a puzzle.") (emphasis added); p. 10, at ¶ 35 ("If **a person of ordinary skill** can implement a predictable variation matching a patent's claim, it is likely the claim is invalid for being obvious.) (emphasis added); p. 11, at ¶ 38 ("another way to decide whether one of **ordinary skill in the art** would combine what is described in various items of prior art is whether there is some teaching, suggestion, or motivation in the prior art for a **skilled person** to make the combination covered by the patent claims.") (emphasis added) and p. 16, at ¶ 56 (I understand that the claims of the '841 patent must be assessed from the perspective of **a person of ordinary skill in the art** as of the earliest claimed priority date, which I am informed, is August 21, 1998.") (emphasis added).)

Dr. Brown also acknowledges that, in connection with the written description requirement of the patent, he must render an opinion from the perspective of a person with ordinary skill in the art: "It is my understanding that to satisfy the written description requirement, the patent disclosure must allow **one of ordinary skill in the art** to visualize or recognize the identity of the subject matter purportedly described."  (*Id* p. 11, at ¶ 39, emphasis added.)

Finally, in connection with Dr. Brown's non-infringement analysis in his September 28, 2015 Report, he states, "I understand that the claims of the '841 patent must be assessed **from the perspective of a person of ordinary skill in the art** as of the earliest claimed priority date, which I am informed is August 21, 1998." (Exhibit B p. 10, at ¶ 30, emphasis added.)

### III. ARGUMENT

#### A.   Standards Under Rule 702 and *Daubert*

As this Court recently recognized, the admissibility of expert testimony is governed by the Federal Rules of Evidence and the principles laid out in *Daubert*. *SimpleAir, Inc. v. Google, Inc.*, No. 2:14-CV-00011-JRG, 2015 WL 5883129 at *1 (E.D. Tex. Oct. 6, 2015), citing *Virnetx, Inc. v Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (a) **the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue**; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). "In other words, '[u]nder [the Federal Rules] and precedent, a district court judge, acting as a gatekeeper, may exclude evidence if it is based upon unreliable principles or methods, or legally insufficient facts and data.'" *SimpleAir*, at *1, citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014), *rev'd on other grounds by Williamson v. Citrix Online, LLC*, No. 2013-1130, 2015 WL 3687459, at *6 (Fed. Cir. June 16, 2015) (en banc in part) (brackets in original).

Moreover, where, as here, a party files a motion to exclude expert testimony, the proponent of the expert testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." *Advanced Technology Incubator, Inc., v. Sharp Corp.*, No. 5:09-CV-00135, 2010 WL 1170148 at *2 (E.D. Tex. Mar. 22, 2010), quoting Fed. R. Evid. 702, 2000 Notes of Advisory Committee. This Court is further "given wide latitude in determining the admissibility of expert testimony," and the Court's decision to exclude any such expert testimony "will not be disturbed on appeal absent an abuse of

discretion." *Id*. at *3, citing *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 988 (5th Cir. 1997) and *Carroll v. Morgan*, 17 F3d 787, 789 (5th Cir. 1994). As demonstrated herein, Defendants cannot meet their burden of establishing that Dr. Brown qualifies as an expert witness by a preponderance of the evidence.

> **B.     Dr. Brown is not Qualified to Render an Opinion as to Validity, Written Description, or Infringement of the '841 Patent Because He Lacks the Requisite Scientific, Technical, or Other Specialized Knowledge That Will Help the Trier of Fact to Understand the Evidence or to Determine a Fact in Issue Under Federal Rule of Evidence 702 And *Daubert***

In patent infringement cases such as this, the Federal Circuit has made it clear that "where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art." *Sundance,* 550 F.3d at 1363 (reversing lower court's allowance of expert testimony where expert was not qualified in the relevant art). Admitting testimony from a person with no skill in the pertinent art "serves only to cause mischief and confuse the factfinder." *Id*. at 1362. As shown in the cases below, when determining whether a proposed expert is "skilled in the art," courts have consistently required that such individuals have experience in designing the very product or technology that is the subject matter of the patent at issue. The testimony of Dr. Brown should be excluded because he has no background, education or experience in the art of designing no-spill cups—a deficiency that is fatal to his ability to render an opinion as to validity, written description, and infringement.

> **1.     Dr. Brown's Report and Opinion as to Validity Should Be Excluded**

In his September 10, 2015 Expert Report, Dr. Brown renders the opinion that claims 1, 3, 5, 6, and 7 of the '841 patent are invalid because they are anticipated and obvious in view of the prior art. (Ex. A pp. 19-31.) However, in order to reach these conclusions, Dr. Brown, by his

own admission, was required to consider the evidence from the perspective of one skilled in the art of "sippy" cup design. (*See* Ex. A, at ¶¶ 22, 26, 28, 30, 35, 38, and 56.) Because Dr. Brown has absolutely no experience in the design or development of no-spill cups, he is not qualified to testify as an expert under Federal Rule of Evidence 702.

In *Sundance,* the Federal Circuit considered whether it was an abuse of discretion to allow an expert in patent law, who had experience with "engines and the like" to testify on the issues of invalidity and infringement of a patent relating to retractable covering systems for truck trailers, swimming pools and porches. 550 F.3d at 1361. The Court noted that the issues of patent infringement and invalidity "are analyzed in great part from the perspective of a person of ordinary skill in the art, and testimony explaining the technical evidence from that perspective may be of great utility to the factfinder." *Id.* The Court then concluded that it was an abuse of discretion for the district court to allow the expert (Mr. Bliss) to testify on the issues of patent infringement and invalidity because he "has no experience whatsoever in 'the field of tarps or covers'" and the defendant was unable to show how the expert's experience with "engines and the like" was sufficiently related to covers. *Id*. at 1362. The court went on:

> Mr. Bliss is not "qualified as an expert by knowledge, skill, experience, training or education" in the pertinent art; we therefore fail to see how he could "assist the trier of fact to understand the evidence or to determine a fact in issue."

*Id.* citing Fed. R. Evid. 702. The Federal Circuit in *Sundance* further stated that it was error to allow this expert, with no relevant expertise in the pertinent art, to testify on the issues of anticipation and obviousness:

> With regard to invalidity . . . **a witness not qualified in the pertinent art may not testify as an expert as to anticipation, or any of the underlying questions**, such as the nature of the claimed invention, what a prior art reference discloses, or whether the asserted claims read on the prior art reference. * * * **Nor may a witness not qualified in the pertinent art testify as an expert on obviousness, or any of the underlying technical questions**, such as the nature of the claimed

8

>invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention.

550 F.3d at 1364 (citations and footnote omitted) (emphasis added). For the same reasons, Dr. Brown should not be permitted to render an opinion on the issues of anticipation and obviousness here, because he has no knowledge, skill, experience, training or education in the design or development of no-spill cups. He therefore cannot assist the trier of fact to understand the evidence or determine a fact in issue. Like the defendant in *Sundance*, Defendants here cannot show how Dr. Brown's self-proclaimed expertise in the strength of materials with subspecialties in plasticity, fracture, fatigue, elasticity, viscoelasticity and viscoplasticity, creep, and wear, is "sufficiently related" to the design of consumer products like sippy cups to qualify him as an expert in the art. 550 F.3d at 1362.

Similarly, in *Extreme Networks v. Enterasys Networks*, the Federal Circuit upheld the lower court's exclusion of expert testimony on the issue of patent invalidity because she did not qualify as a person of ordinary skill in the relevant art. 395 Fed. Appx. 709 (Fed. Cir. 2010). The proposed expert had a degree in computer programming and worked as a system administrator, but she had never worked on the design or development of high speed switches, bridge or routers, which were the subject of the patent in suit. "General experience in a related field may not suffice when experience and skill in specific product design are necessary to resolve patent issues." *Id.* at 715.

And in *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360 (Fed. Cir. 2006), the Federal Circuit affirmed the district court's exclusion of an expert witness on the issues of anticipation and obviousness in connection with a patent on a keyboard design because one skilled in the art of the invention was a computer keyboard designer, and the expert's area of

expertise was ergonomics. *See also Anascape v. Microsoft*, No. 9:06CV158, 2008 WL 7180758 at *2 (E.D. Tex. Apr. 28, 2008) (The court excluded expert testimony in a patent infringement case because the expert lacked qualifications in the relevant field. Although he had degrees in engineering and had programmed, designed, directed and produced over 30 commercial computer games, the patent in suit related to "graphic image controllers," and the expert lacked experience in designing game controllers.)

As set forth in these many cases, Dr. Brown's lack of experience in the design of sippy cups precludes him from qualifying as an expert or testifying on the issues of patent invalidity, anticipation or obviousness, and his report concerning these issues should be excluded.

### 2. Dr. Brown's Report and Opinion as to Written Description Should Be Excluded

Dr. Brown has also submitted an opinion that the patent in suit does not satisfy the written description requirement of 35 U.S.C. § 112. In his opinion, Dr. Brown states that "to satisfy the written description requirement, the patent disclosure must allow one of ordinary skill in the art to visualize or recognize the identity of the subject matter purportedly described." (Ex. A p. 11, at ¶ 39.) However, because he lacks the knowledge of a person with ordinary skill in the art of designing no-spill cups, Dr. Brown's testimony should be excluded.

In *Advanced Technology*, a court in this district excluded, under very similar facts, the testimony of the plaintiff's expert witness in a patent infringement case because the witness, like Dr. Brown here, was not qualified to testify concerning the knowledge of one skilled in the art. 2010 WL 1170148 at *5. The expert in that case (Mr. Bjorge) was knowledgeable about PTO practice and procedure but lacked expertise concerning the LCD technology that was the subject of the patents in suit. In determining whether the expert could testify concerning issues surrounding the best mode, definiteness, and enablement aspects of the written description

10

requirement of Section 112, the Court noted the statutory language requiring that the description of the invention be "in such full, clear, concise, and exact terms **as to enable any person skilled in the art to which it pertains,** or with which is most nearly connected, to make and use the same." 2010 WL 1170148 at *4, citing 35 U.S.C. § 112 (emphasis in original).

The court concluded that the expert's testimony should be stricken in connection with the Section 112 inquiries because he could not render an opinion from the viewpoint of a person skilled in the relevant art. *See id.* at *3, citing Fed. R. Evid. 702. The court stated, concerning the inquiry as to whether the written description in the patent specification disclosed the best mode such that one of ordinary skill in the art could have practiced it, that plaintiff's expert "himself cannot provide such testimony. . . . Accordingly, Mr. Bjorge's testimony would not 'assist the trier of fact to understand the evidence or to determine a fact at issue.'" *Id.* Regarding the definiteness inquiry, the expert could not testify either "as he himself relied upon [a different expert] in forming his opinions regarding what would be understood by one skilled in the art." *Id.* at *4. The court reached the same conclusion in connection with the enablement requirement and rejected the proposed testimony under Rule 702 because the expert "provides no opinions detailing the interpretation of 'any person skilled in the art.'" *Id.* The Court concluded that "Mr. Bjorge's extensive testimony regarding the prior art and materiality would necessarily require some level of expertise of one skilled in the art. By admitting the testimony of Mr. Bjorge on these issues, this Court could run afoul of the Federal Circuit's mandate in *Sundance* . . .." *Id.* at *5. For the same reasons, this Court should exclude any report or testimony from Dr. Brown concerning the written description requirements of Section 112.

### 3.     Dr. Brown's Report and Opinion as to Infringement Should Be Excluded

In his September 28, 2015 Expert Report, Dr. Brown renders the opinion that the Defendants' accused products do not infringe Claims 1, 3, 5, 6 or 7 of the '841 patent. (Ex. B pp. 11-19.) As stated above, the Federal Circuit in *Sundance* considered whether it was an abuse of discretion to allow an expert with a background in patent law and engines to testify on the issue of patent infringement relating to tarps and covers. The court concluded that it was an abuse of discretion because the issue of infringement is analyzed "in great part from the perspective of a person of ordinary skill in the art" and the expert was not qualified as an expert by knowledge, skill, experience, training or education in the pertinent art. 550 F.3d at 1361-62. For the same reasons, Dr. Brown's lack of experience in connection with the design of no-spill cups renders him unqualified to testify on the issues of infringement here.

Similarly, in *Extreme Networks*, the lower court's exclusion of expert testimony on the issue of noninfringement of a patent was upheld by the Federal Circuit because the expert did not qualify as a person of ordinary skill in the relevant art. 395 Fed. Appx. At 715. (The proposed expert had a degree in computer programming and worked as a system administrator, but she had never worked on the design or development of high speed switches, bridge or routers, which were the subject of the patent in suit.)

For these reasons, Dr. Brown's September 28, 2015 Expert Report and any related testimony on the issue of patent infringement should be excluded from the trial of this matter.

## IV. CONCLUSION

Admitting the reports and testimony of Dr. Brown under the facts here presented would "serve[] only to cause mischief and confuse the factfinder." *Sundance*, 550 F.3d at 1363. For the reasons stated herein, Plaintiffs respectfully request that the two Reports dated September 10, 2015 and September 28, 2015 of Dr. Stuart Brown, along with the opinions expressed therein, be excluded under Federal Rule of Evidence 702, *Daubert*, and the authorities cited herein.

Dated: October 19, 2015                                          Respectfully submitted,

*/s/ Deron R. Dacus*                                             /s/ *Edward D. Manzo*
Deron R. Dacus, State Bar No. 00790553      Edward D. Manzo, Pro Hac Vice
Shannon Dacus, State Bar No. 00791004       Husch Blackwell LLP
Pete Kerr, State Bar No. 24076478                   120 So. Riverside Plaza, #2200
**THE DACUS FIRM, P.C.**                                Chicago, IL 60606
821 ESE Loop 323, Suite 430                            312-526-1535
Tyler, TX 75701                                                    Email: *Edward.manzo@huschblackwell.com*
Tel. No.: 903-705-1117
Fax No.: 903-581-2543
Email: *ddacus@dacusfirm.com*

G.R. (Randy) Akin, State Bar No. 00954900    Hartwell P. Morse, III, Pro Hac Vice
G.R. (Randy) Akin, P.C.                                     IP Litigation Counsel
3400 West Marshall Avenue, Suite 300          LUV N' CARE, LTD.
Longview, TX 75604                                         3030 Aurora Ave., 2nd Floor
Tel. No.: 903-297-8929                                     Monroe, LA 71201
Fax No.: 903-297-9046                                     Telephone: (318) 338-3108
Email: *gra@randyakin.com,*                         Facsimile: (318) 388-5892
*kgale@randyakin.com*                                   Email: *hartwellm@nuby.com*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on October 19, 2015, a true and correct copy of the foregoing PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND OPINION OF DEFENDANTS' EXPERT STUART B. BROWN AND MEMORANDUM IN SUPPORT THEREOF was served via electronic mail upon the following counsel of record.

Michael Charles Smith
Siebman Burg Phillips & Smith, LLP
P O Box 1556
Marshall, TX 75671-1556
Phone (903) 938-8900
Fax: (972) 767-4620
Email: michaelsmith@siebman.com

Jane J. Du
Fish & Richardson PC - Dallas
1717 Main Street
Suite 5000
Dallas, TX 75201
Phone: (214) 292-4044
Fax: (214) 747-2091
Email: du@fr.com

John S. Goetz
Fish & Richardson - New York
601 Lexington Ave
52nd Floor
New York, NY 10022
Phone: (212) 765-5070
Fax: (212) 258-2291
Email: goetz@fr.com

Rex Mann
Fish & Richardson PC - Dallas
1717 Main Street, Suite 5000
Dallas, Texas  75201 |
Phone: (214) 760-6116
Fax: (214) 747-2091
Email: mann@fr.com

        /s/ *Deron R. Dacus*
       Deron R. Dacus

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), Edward D. Manzo, counsel for Plaintiffs, conferred via telephone on October 19, 2015, with counsel for Defendants regarding the foregoing motion. The parties were unable to come to an agreement on this motion and Defendants are opposed.

      /s/ *Edward D. Manzo*
      Edward D. Manzo